## UNITED STATES ET AL. v. MORGAN ET AL.

No. 221. Argued October 20, 21, 1938. Reargued April 20, 1939.—Decided May 15, 1939.

184

*Solicitor General Jackson,* with whom *Assistant Attorney General Arnold,* and *Messrs. Wendell Berge, M. S. Huberman, Brunson MacChesney,* and *Warner W. Gardner* were on the briefs, on the reargument and on the original argument, for appellants.

*Mr. Frederick H. Wood* on the original argument, and with *Mr. John B. Gage* on the reargument, for appellees. *Mr. Thomas T. Cooke* was with them on the briefs.

MR. JUSTICE STONE delivered the opinion of the Court.

On this appeal we are asked to determine the proper disposition to be made of a fund paid into the court below pending a suit instituted in that court to set aside an order of the Secretary of Agriculture reducing scheduled rates for services rendered at the Kansas City stockyards. The fund is made up of the difference between the scheduled rates and those prescribed by the Secretary's order, which was ultimately set aside by this Court in *Morgan* v. *United States,* 304 U. S. 1, without consideration of the merits, for failure of the Secretary to follow the procedure prescribed by the statute.

On June 14, 1933, the Secretary of Agriculture promulgated an order under the Packers and Stockyards Act, 1921, 42 Stat. 159; 7 U. S. C. §§ 181–229, setting aside a schedule of maximum rates to be charged for stockyard services, filed by market agencies at the Kansas City stockyards, and prescribing a new and lower rate schedule for the future. In a suit brought in the district court for western Missouri by appellees, conducting market agencies at the Kansas City stockyards, to set aside the

order as confiscatory and as having been rendered without procedural due process, the court on July 22, 1933, entered a temporary restraining order enjoining enforcement of the Secretary's order upon condition that appellees should:

"deposit with the Clerk of this Court on Monday of each and every week hereafter while this order, or any extension thereof, may remain in force and effect and pending final disposition of this cause, the full amount by which the charges collected under the Schedule of Rates in effect exceeds the amount which would have been collected under the rates prescribed in the Order of the Secretary, together with a verified statement of the names and addresses of all persons upon whose behalf such amounts are collected by petitioner."

After two appeals we reversed the final decree of the district court, which had sustained the order of the Secretary. This Court held that he had not accorded to appellees the "full hearing" which § 310 of the Act requires, and, without considering the merits, it remanded the cause for further proceedings. *Morgan* v. *United States,* 298 U. S. 468; 304 U. S. 1. A petition for rehearing, in part on the ground that the mandate of this Court had made no provision for the distribution of the fund paid into the district court pursuant to its restraining order, was denied in a memorandum opinion stating that the questions raised were appropriately for the district court, to which the cause had been remanded for further proceedings. The opinion added:

"We remand the case to the District Court for further proceedings in conformity with our opinion. What further proceedings the Secretary may see fit to take in the light of our decision, or what determinations may be made by the District Court in relation to any such pro-

ccedings, are not matters which we should attempt to forecast or hypothetically to decide." 304 U. S. 23, 26.

By this remand the Secretary was left free to take such further proceedings as the statute permits. *Texas & Pacific Ry. Co.* v. *Interstate Commerce Comm'n,* 162 U. S. 197, 238–239; *Southern Railway Co.* v. *St. Louis Hay & Grain Co.,* 214 U. S. 297, 302; *Florida* v. *United States,* 292 U. S. 1, 9.

The Secretary thereupon, by order of June 2, 1938, reopened the original proceedings which had resulted in the challenged order of June 14, 1933. He directed that the "Proceedings, Findings of Fact, Conclusion, and Order" of June 14, 1933, be served upon the appellee market agencies as his tentative findings and order, with an opportunity for appellees to file exceptions to them and to make oral argument upon the exceptions. This action was followed, June 11, 1938, by the present proceeding, begun by motion of appellants in the district court to stay further proceedings there and to direct the clerk of the court to retain the impounded funds until such time as the Secretary, proceeding with due expedition, should have entered a final order in the proceedings reopened by him. This motion was denied, and from the order of the district court granting a counter-motion by appellees to distribute the fund among them, the case comes here on appeal.[1] § 316 of the Packers and Stock-

---

[1] On the same date the district court entered a decree on the mandate of this Court setting aside the Secretary's order of June 14, 1933, and permanently enjoining its enforcement. In that decree the district court retained jurisdiction and decreed that "such other proceedings be had herein in conformity to the opinion of said Supreme Court with reference to the distribution or restitution of funds deposited by plaintiffs in the Registry of this Court with the Clerk thereof pursuant to the provisions of the temporary restraining order entered on the 22nd day of July 1933 as to law and justice may appertain."

yards Act, 42 Stat. 168; 7 U. S. C. § 217; 38 Stat. 220, 28 U. S. C. §§ 47, 47 (a); § 238 (5) of the Judicial Code; 28 U. S. C. § 345 (5). This Court has stayed and superseded the order of the district court pending appeal. October 10, 1938.

The district court held that the fund should presently be distributed to appellees, both because the Secretary is without authority under the Act to make any order prescribing rates and charges which will be effective as of June 14, 1933, the date of his original order, and because it construed the terms of its own restraining order as requiring distribution of the fund to appellees on the final determination by this Court that the Secretary's order of June 14, 1933, was invalid. Thus, as a result of the litigation, the district court has twice sustained the determination of the Secretary that the rates prescribed by him, on the basis of voluminous evidence, were reasonable; but because of this Court's decision that the Secretary had failed to observe the statutory requirement of a full hearing, we have never reviewed that determination. The question now arises whether upon a redetermination of that issue by the Secretary the district court will have, and should exercise, the power to order distribution of the impounded fund in conformity to his determination by directing that so much, if any, of the amounts paid into court as exceeds the rates ultimately determined upon appropriate review of the Secretary's findings to be just and reasonable be returned to those who have paid them. This issue must be decided now, for unless the court will have such power there is no occasion to retain the fund pending further proceedings before the Secretary, and distribution of it must be made as the district court has directed.

Decision turns on the meaning and application of the provisions of the Packers and Stockyards Act, construed in the light of its dominant purpose to secure to patrons

of the stockyards prescribed stockyard services at just and reasonable rates, and upon the authority and duty of the district court to effectuate that purpose in making disposition of the fund. Section 304 of the Act requires every stockyard owner and market agency to furnish nondiscriminatory and reasonable stockyard services, and § 305 declares that "All rates or charges made for any stockyard services furnished at a stockyard by a stockyard owner or market agency shall be just, reasonable, and nondiscriminatory, and any unjust, unreasonable, or discriminatory rate or charge is prohibited and declared to be unlawful." Section 307 makes a like requirement as to regulations and practices in respect to furnishing stockyard services. Section 306 makes it the duty of stockyard owners and market agencies to file with the Secretary a schedule of rates for stockyard services and to charge and collect such rates, unless they are set aside by appropriate action of the Secretary or changed by the filing of new rates as authorized by the section. Section 308 (a) provides that any stockyard owner or market agency violating any of the previously mentioned sections shall be liable to the persons injured to the full extent of the damage sustained. Section 308 (b) provides for enforcement of such liability either by complaint to the Secretary or by suit in any district court, and concludes with the declaration that "this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." Section 310 authorizes the Secretary "after full hearing" on complaint, or on his own initiative, to prescribe just and reasonable rates for the future.

Appellees insist that notwithstanding the command of § 305 that all rates shall be "just, reasonable, and nondiscriminatory," its mandate is effective only so far as implemented by the other sections of the Act; that except

in a reparation case the statute forbids the Secretary to make orders affecting completed transactions, and that acting on his own initiative, as he does here, he can fix rates for the future only. They point out that under § 309 (a) and (e) and § 310; any person aggrieved may, on petition to the Secretary, seek damages for the exaction of an unreasonable rate in the past, the naming of a new rate for the future, or both, but that when the Secretary institutes such proceedings on his own motion he is precluded by § 309 (c) from making any order for the payment of money. As the original proceeding here and the action of the Secretary in reopening it were taken on his own motion, the conclusion is drawn that there can be no legal warrant for restitution of the impounded moneys to the patrons of the market agencies, even though the Secretary shall now determine, on evidence and by proper procedure, that the scheduled rates exceeded the reasonable rates prescribed by § 305.

Even though the premises be accepted as in all respects sound, the conclusion does not follow. There is here no question of the Secretary's making an order for the payment of money. The fund having been taken into custody of the court, in consequence of its order restraining the operation of the rate schedule prescribed by the Secretary, the questions for our decision are whether the district court, in the discharge of the duty which it has thus assumed as a court of equity, can rightly dispose of the fund without regard to the command of § 305 if the Secretary shall determine that the rates exacted by aid of the court, and paid into its registry, are excessive; and whether, in the exercise of its discretion, the court should retain the fund until such time as the Secretary, proceeding with due expedition, shall make his final determination and order.

In answering these questions there are two cardinal principles which must guide us to our conclusion. The

one is that in construing a statute setting up an administrative agency and providing for judicial review of its action, court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through coördinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; [2] neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim. The other guiding principle is that in reviewing the action of the Secretary and in similarly reviewing the action of the Interstate Commerce Commission in conformity with the provisions of the Urgent Deficiencies Act, the district court sits as a court of equity, see *Ford Motor Co.* v. *National Labor Relations Board,* 305 U. S. 364, 373; *Inland Steel Co.* v. *United States,* 306 U. S. 153; and in exerting its extraordinary powers to stay execution of a rate order, and in directing payment into court of so much of the rate as has been found administratively to be excessive, it assumes the duty of making disposition of the fund in conformity to equitable principles.

Assuming, as appellees contend, that after the Secretary's order of June, 1933, was set aside he could, in the reopened proceeding, neither promulgate a rate order as of that date nor make an order for the payment of

---

[2] See Y. B. 22 Ed. IV Mich. pl. 21; *Heath* v. *Rydley,* (1614) Cro. Jac. 335; 1 Holdsworth, History of English Law, 459–465.

money, he was still not without authority in the premises under the statute and the mandate of this Court. He was free to make an order fixing rates for the future, and for that purpose or any other within the purview of the Act he is now free to determine a reasonable rate for the period antedating any order he may now make. See *Atlantic Coast Line R. Co.* v. *Florida,* 295 U. S. 301, 312. No prior decision of the Secretary stands in the way of his making the determination now. Cf. *Arizona Grocery Co.* v. *Atchison, T. & S. F. Ry. Co.,* 284 U. S. 370. The sole limitation upon his power, prescribed by § 309 (c), is that upon an inquiry instituted by him he may not order the payment of money. In other respects his power to investigate ánd decide is unaffected.[3] He may make inquiry "as to any matter or thing concerning which a complaint is authorized to be made" to him, "or concerning which any question may arise under any of the provisions" of the Act, "or relating to the enforcement of any" provision. He is given "the same power and authority to proceed with any inquiry instituted upon his own motion as though he had been appealed to by petition, including the power to make and enforce any order or orders in the case or relating to the matter or thing concerning which the inquiry is had, except orders for the payment of money." § 309 (c).

---

[3] § 309 (c): "The Secretary may at any time institute an inquiry on his own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made to or before the Secretary, by any provision of this title, or concerning which any question may arise under any of the provisions of this title, or relating to the enforcement of any of the provisions of this title. The Secretary shall have the same power and authority to proceed with any inquiry instituted upon his own motion as though he had been appealed to by petition, including the power to make and enforce any order or orders in the case or relating to the matter or thing concerning which the inquiry is had, except orders for the payment of money."

That the Secretary, acting under § 309 (a), could now entertain a complaint by the patrons of appellees who have contributed to the fund in court charging that the rates exacted were in violation of § 305, seems to be conceded and is, we think, plain. Section 309 (a) specifically provides: "If . . . there appears to be any reasonable ground for investigating the complaint, it shall be the duty of the Secretary to investigate the matters complained of in such manner and by such means as he deems proper." It seems equally plain that under § 309 (c) the Secretary, in the exercise of his discretion, may conduct such an investigation on his own motion. Ordinarily, it is true, there would be no occasion for such an investigation if, as a result of it, the Secretary could make no reparation order. But, as we shall presently point out, when the alleged excessive rates are *in custodia legis,* the court has authority and is under an equitable duty to dispose of them according to law and justice. Thus the Secretary has the best of reasons to exercise his power to determine whether the rates were reasonable and may rightly do so, if his determination can afford a proper basis for the action of the district court in making disposition of the fund.

The district court, in staying the Secretary's order and at the same time arresting the excess payments to appellees under the scheduled rates, assumed the duty of making the proper disposition of the fund upon the termination of the litigation. The duty was the more imperative here because the court's injunction order not only deprived the public of the benefit of the lower rates but obstructed any effective reparation order by the Secretary. Its action presupposed that the ownership of the excess payments was in doubt and could be finally determined only by an adjudication on the merits of the reasonableness of the filed rates. In taking the payments into custody it acted as a court of equity, charged both

with the responsibility of protecting the fund and of disposing of it according to law, and free in the discharge of that duty to use broad discretion in the exercise of its powers in such manner as to avoid an unjust or unlawful result. It entered into no contract or understanding with the litigants; it entered into no undertaking as to the manner of disposing of the fund; its duty with respect to it is that prescribed by the applicable principles of law and equity for the protection of the litigants and the public, whose interests the injunction and the final disposition of the fund affect. *Inland Steel Co.* v. *United States, supra.*

It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved. *Central Kentucky Gas Co.* v. *Railroad Commission,* 290 U. S. 264, 271; *Pennsylvania* v. *Williams,* 294 U. S. 176, 185; *Virginian Ry. Co.* v. *System Federation,* 300 U. S. 515, 552 *et seq.* Congress having by the Packers and Stockyards Act established the public policy of maintaining reasonable rates for stockyard services, and having prohibited and declared unlawful any unjust or unreasonable rate, a court of equity should be astute to avoid the use of its process to effectuate the collection of unlawful rates, and equally so to direct it to the restitution of rates which it has taken into its own custody, once they are shown to have been unlawful. If such a determination had already been made by the Secretary in the proceeding before him, after full hearing, and if it were found by the district court to be supported by evidence, the duty of the court to make restitution forthwith would seem evident, notwithstanding the absence of any order of the Secretary directing the payment. *Inland Steel Co.* v. *United States, supra.*[4] The Secretary, as we

---

[4] In *Inland Steel Co.* v. *United States,* 306 U. S. 153, the Interstate Commerce Commission had ordered certain railroads to cease

have seen, is authorized to make the determination. Section 305 denounces unreasonable rates as unlawful. The statute, as declared by § 308 (b), saves to the court authority to give any remedy which in the present circumstances it might otherwise afford.

This Court went much further in *Atlantic Coast Line R. Co.* v. *Florida, supra,* in denying, on equitable grounds, restitution to shippers of the excess of an intrastate rate, prescribed by order of the Interstate Commerce Commission to avoid discrimination against interstate commerce, over that prescribed by the state commission, where the order of the former was later set aside by this Court for want of proper findings by the Commission. Upon further proceedings before the Commission it made a second order, upon proper findings of discrimination, establishing the rate as before. The final result of the litigation was that the railroads were permitted to collect and retain the higher rates for a period during which there was no lawful order of the Commission superseding the state commission rates. There, as here, the administrative

the payment to shippers, in conformity to a filed tariff, of switching charges which the Commission had found to be unlawful. On review of the action of the Commission the district court stayed the Commission's order and directed the railroads, pending final disposition of the cause, to place further payments due under the tariff in a special fund to be held subject to the order of the court. The Commission's order was ultimately sustained, but meanwhile the Commission, pending review in the courts, had postponed the effective date of its order, so that during the litigation there was no operative Commission order forbidding the unlawful payments. This Court rejected the contention of the shippers that the fund must be paid over to them because it was accumulated in the absence of a controlling order of the Commission. We held that it was the duty of the district court, resulting from its injunction and its control over the fund, to make equitable disposition of it, and we sustained the district court's order that the fund should be turned over to the railroads in conformity to the Commission's determination, confirmed on judicial review, that the switching allowances were unlawful.

agency could prescribe rates only for the future, and the higher rates exacted between the date of the first order and the second were without the sanction of a valid order. But there, as here, the first administrative order was not a nullity. *Ewell* v. *Daggs,* 108 U. S. 143, 148, 149; *Weeks* v. *Bridgman,* 159 U. S. 541, 547; *Toy Toy* v. *Hopkins,* 212 U. S. 542, 548. Though voidable, it could not be ignored without incurring the penalties for disobedience inflicted by the applicable provisions of the statute. The rates did not lose their unjust and unreasonable quality in the one case, or cease to be unjustly discriminatory in the other, merely because the administrative orders in each were voidable for procedural defects or because a second order could operate only for the future. In each case the administrative agency was not without power to inquire whether injustice had been done by the earlier rate, and the court, called on to ascertain, according to equitable principles, the rights of the parties with respect to payments made under the voidable order, could take into account the subsequent determination of the administrative agency as the basis of its action. *Atlantic Coast Line R. Co.* v. *Florida, supra,* 312–313, 317; *New York Edison Co.* v. *Maltbie,* 244 App. Div. 436; 279 N. Y. S. 949; *Brooklyn Union Gas Co.* v. *Maltbie,* 245 App. Div. 74; 281 N. Y. S. 233.

It is said that the distinction between this and the *Atlantic Coast Line* case is the distinction between judicial inaction and judicial action; that there the court, upon settled equitable principles, was free to refrain from compelling restitution if satisfie that no injustice had been done, see *Tiffany* v. *Boatman's Institution,* 18 Wall. 375, 385; *Mississippi & M. R. Co.* v. *Cromwell,* 91 U. S. 643, 645; *Deweese* v. *Reinhard,* 165 U. S. 386, 390, but that here the court is called on by appellants to act by withholding from ap-

pellees rates which are still lawfully in force because the filed schedule has not been set aside by a valid order of the Secretary. While at the moment appellants are content with inaction, and it is appellees who are demanding action—the payment to them of rates whose lawfulness is challenged and not yet determined—the actual posture of the case is such that the court is under a self-imposed duty to act by virtue of having taken the fund into its possession, and in acting to dispose of the fund it must conform to controlling legal principles. Reasonableness of the rates was not established by the filed schedules. Had the rates collected been paid to appellees instead of to the clerk of the court, the Secretary could have ordered reparation upon proper findings that they were unreasonable. And the question is whether the court must now, in the face of a proceeding by the Secretary to determine the reasonableness of the challenged rates, use its power to complete their collection at the risk of obstructing reparation, or whether it should itself remain inactive until their lawfulness is determined and then act accordingly.

It is a power "inherent in every court of justice so long as it retains control of the subject matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Arkadelphia Co. v. St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 146. See *Northwestern Fuel Co. v. Brock,* 139 U. S. 216, 219. What has been given or paid under the compulsion of a judgment the court will restore when its judgment has been set aside and justice requires restitution. *Northwestern Fuel Co. v. Brock, supra; Ex parte Lincoln Gas & Electric Co.,* 257 U. S. 6; *Baltimore & Ohio R. Co. v. United States,* 279 U. S. 781. And where by its injunction a court has compelled payment into its registry of amounts which may in pending proceedings be found not to have been due

from those who paid them, we think justice equally requires the court to await the outcome of the proceedings in order that it may discharge the duty which it owes to the litigants and the public by avoiding unlawful disposition of the fund in the meantime, and ultimately distributing it to those found to be entitled to it. See *New York Edison Co.* v. *Maltbie, supra; Brooklyn Union Gas Co.* v. *Maltbie, supra;* cf. *United States* v. *Klein,* 303 U. S. 276.

A proceeding is now pending before the Secretary in which, as we have seen, he is free to determine the reasonableness of the rates. His determination, if supported by evidence and made in a proceeding conducted in conformity with the statute and due process, will afford the appropriate basis for action in the district court in making distribution of the fund in its custody. *Atlantic Coast Line R. Co.* v. *Florida, supra,* 312–313, 317. Due regard for the discharge of the court's own responsibility to the litigants and to the public and the appropriate exercise of its discretion in such manner as to effectuate the policy of the Act and facilitate administration of the system which it has set up, require retention of the fund by the district court until such time as the Secretary, proceeding with due expedition, shall have entered a final order in the proceedings pending before him. Cf. *Mahler* v. *Eby,* 264 U. S. 32; *Tod* v. *Waldman,* 266 U. S. 113. The district court will thus avoid the risk of using its process as an instrument of injustice and, with the full record of the Secretary's proceedings before it, including findings supported by evidence, the court will have the appropriate basis for its action and will be able to make its order of distribution accordingly.

*Reversed.*

MR. JUSTICE REED took no part in the consideration or decision of this case.

Mr. Justice Butler, dissenting.

In proceedings instituted on complaint of shippers in 1922, the Secretary, July 27, 1923, approved a 15 per cent reduction of market agencies' charges. In May, 1932, the agencies filed tariffs, which were not challenged by shippers or suspended by the Secretary, making additional reductions of about 10 per cent. These rates remained in force until November 1, 1937. Then there became effective a new schedule established by agreement between the agencies and the Secretary. There being no question as to reasonableness of charges made since that date, the appellees were not required to continue making deposits to secure their compliance with the Secretary's order of June 14, 1933 challenged in this suit, and so impounding ceased.

The money on deposit in the district court is made up of amounts taken from charges as low as, or lower than, those so put and kept in force and applied until November 1, 1937. In the proceedings pending before him, the Secretary may not order reparation (see § 309; also *Arizona Grocery Co.* v. *Atchison, T. & S. F. Ry. Co.,* 284 U. S. 370, 389) and is without jurisdiction to do more than prescribe charges to be applied after the effective date of that order if one shall be made. The challenged order having been adjudged invalid because made in violation of the Act, *Morgan* v. *United States,* 304 U. S. 1, the appellees immediately became entitled to the money that, in pursuance of the restraining order, was deposited in court by them to secure their compliance with the Secretary's order if found valid. The record contains nothing to support the idea that the pledge was for any other purpose, or to justify or excuse withholding it for another use. For the reasons stated in its opinion, 24 F. Supp. 214, the district court rightly held appellees entitled

to have their money returned to them. Its decree should be affirmed.

MR. JUSTICE MCREYNOLDS and MR. JUSTICE ROBERTS join in this opinion.