WALTER BROWN & SONS, Inc., v. BOWLES, Administrator, OPA, et al.

No. 25747.

District Court of the United States for the District of Columbia.

Nov. 20, 1944.

324

Arthur J. Hilland, of Washington, D. C., for plaintiff.

Fleming James, of Washington, D. C., Harold Craske, of New York City, and John L. Laskey, of Washington, D. C., for defendant.

Before ARNOLD, Associate Justice, United States Court of Appeals, District of Columbia, and LETTS and GOLDSBOROUGH, Associate Justices, District Court of the United States for the District of Columbia.

PER CURIAM.

Plaintiff, a Washington Corporation, was suspended from dealing in all commodities covered by Ration Order No. 16 issued by the Office of Price Administration.[1] It brought this suit in the District Court to enjoin the defendants as officials of the Office of Price Administration from enforcing the order of suspension. Among the grounds for injunctive relief set forth in the complaint is the assertion that the Second War Powers Act, 50 U.S.C.A. Appendix, § 631 et seq., is unconstitutional. For that reason, at the request of Mr. Justice Letts before whom the case was pending in the District Court, this three-judge statutory court was designated to hear the issues in this case.[2]

In asserting the unconstitutionality of the Second War Powers Act[3] plaintiff contends (1) that it unlawfully delegates legislative power permitting the suspension of plaintiff's business by administrative order; (2) that the procedure authorized under the Act does not constitute due process. There is no merit in either contention.

Section 2(a) (2) provides in part: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Section 2(a) (8) authorizes the President to delegate the above described power. Executive Order No. 9125[4] authorizes the exercise of that power by the Office of Price Administration. The standards set out in Section 2(a) (2) are adequate. The President must first find that a shortage exists in the supply of a material or of a facility for defense or for private account or for export.[5] When that situation appears allocations must be made which are appropriate to the public interest and necessary to national defense.[6] It is clear that in war Congress may fix standards under which the Executive may act in war emergencies which are flexible enough for speed and efficiency in an emergency.[7]

The procedure set up under the Act and followed in this case does not lack due process. Plaintiff has had a full and adequate hearing after notice of the charges.

---

[1] Ration Order No. 16 (Meats, Fats, Fish, and Cheeses), issued March 20, 1943, 8 Fed.Reg. 3591.

[2] Aug. 24, 1937, 50 Stat. 752, 28 U.S. C.A. § 380a. See California Water Service Co. v. City of Redding, 1938, 304 U. S. 252, 58 S.Ct. 865, 82 L.Ed. 1323.

[3] March 27, 1942, 56 Stat. 176, 50 U.S. C.A.Appendix, § 633.

[4] Executive Order 9125, April 7, 1942, 7 Fed.Reg. 2719.

[5] See Field v. Clark, 1892, 143 U.S. 649, 693, 12 S.Ct. 495, 505, 36 L.Ed. 294: "He was the mere agent of the law-making department to ascertain and declare the event upon which its expressed will was to take effect."

[6] See Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 397, 60 S. Ct. 907, 84 L.Ed. 1263, Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; Hirabayashi v. United States, 1943, 320 U.S. 81, 104, 63 S.Ct. 1375, 87 L.Ed. 1774; United States v. Rock Royal Co., 1939, 307 U.S. 533, 549–550, 59 S.Ct. 993, 83 L.Ed. 1446; J. W. Hampton, Jr., & Co. v. United States, 1928, 276 U.S. 394, 408, 409, 48 S.Ct. 348, 72 L.Ed. 624.

[7] O'Neal v. United States, 1944, 6 Cir., 140 F.2d 908, 151 A.L.R. 1474, certiorari denied 322 U.S. 729, 64 S.Ct. 945; Gallagher's Steak House, Inc., v. Bowles, 1944, 2 Cir., 142 F.2d 530, certiorari denied 322 U.S. 764, 64 S.Ct. 1288; Country Garden Market, Inc. v. Bowles, 1944, 78 U.S.App.D.C. 381, 141 F.2d 540, certiorari denied 322 U.S. 752, 64 S.Ct. 1264. Cf. Yakus v. United States, 1944, 321 U.S. 414–423–427, 64 S.Ct. 660.

There was ample opportunity to test the constitutionality of the Act itself by a complaint in the District Court before violation of the order. Plaintiff was granted a preliminary stay of the order of suspension in those proceedings after violating the order in order to raise the question of constitutionality.[8]

We will next consider and decide plaintiff's other contentions which do not go to the constitutionality of the Act.[9]

The complaint alleges that the proceeding before the Hearing Commissioner of the Office of Price Administration was invalid because the notice was signed by the District Enforcement Officer at a time when the regulations provided it should have been issued by the Regional Attorney.[10] If there was error in this notice it has been waived by the plaintiff's failure to object at the hearing. The notice gave the plaintiff adequate information as to the charges. Plaintiff was given every opportunity to cross-examine witnesses and put in evidence. He makes no claim of surprise or prejudice.

A second contention of plaintiff is that since the livestock which he buys is not allocated his suspension from dealing in these commodities is not the suspension of an allocation under Section 2(a) (2) of Title 3 of the Second War Powers Act, supra. He asserts that the taking of excess ration points for meat did not affect the ration system because the amount of livestock which the plaintiff could slaughter was unrationed. There is no merit in this argument. As soon as the livestock is slaughtered it became a rationed commodity. The Office of Price Administration has set up a system of ration points as an effective means of regulating the supply of commodities to dealers. When plaintiff took an excess of ration points for his meat, that activity interfered with the rationing of that commodity. The suspension of plaintiff from dealing with the commodities thereafter was a reasonable and necessary means of securing an effective allocation of rationed meat.[11]

There was ample evidence to support the findings of the Hearing Commissioner and the Hearing Administrator of the Office of Price Administration. We find no merit in the other contentions urged by plaintiff.

Defendant's motion that the complaint be dismissed with costs is granted.

---

[8] "When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted. This permits the courts to participate in law enforcement entrusted to administrative bodies only to the extent necessary to protect justiciable individual rights against administrative action fairly beyond the granted powers. The responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the courts by Congress by the statutes establishing courts and marking their jurisdiction. Cf. United States v. Morgan, 307 U.S. 183, 190–191, 59 S.Ct. 795, 799, 83 L.Ed. 1211." Stark v. Wickard, 1944, 321 U.S. 288, 309–310, 64 S.Ct. 559, 571; Carter v. Bowles, 1944, D.C.W.D.S.C., 56 F.Supp. 278, 282–283.

[9] Sterling v. Constantin, 1932, 287 U.S. 378, at page 393, 53 S.Ct. 190, 193, 77 L.Ed. 375: "As the validity of provisions of the state Constitution and statutes, if they could be deemed to authorize the action of the Governor, was challenged, the application for injunction was properly heard by three judges. * * * The jurisdiction of the District Court so constituted, and of this Court upon appeal, extends to every question involved, whether of state or federal law, and enables the court to rest its judgment on the decision of such of the questions as in its opinion effectively dispose of the case. *, * * *"

[10] Procedural Reg. No. 4, 8 Fed.Reg. 1744.

[11] Compare the following by the Supreme Court in L. P. Steuart & Bro. v. Bowles, 1944, 322 U.S. 398, 405, 64 S. Ct. 1097, 1100: "By disregarding quotas prescribed for each householder and by giving some more than the allotted share they would defeat the objectives of rationing and destroy any program of allocation. These middlemen are the chief if not the only conduits between the source of limited supplies and the consumers. From the viewpoint of a rationing system a middleman who distributes the product in violation and disregard of the prescribed quotas is an inefficient and wasteful conduit. If the needs of consumers are to be met and the consumer allocations are to be filled, prudence might well dictate the avoidance or discard of such inefficient and unreliable means of distribution of a scarce and vital commodity."