Chester **BOWLES**, Adm'r, OPA, v. **870 SEV-ENTH AVENUE CORPORATION.**

No. 297.

Circuit Court of Appeals, Second Circuit.

Aug. 3, 1945.

820

Thomas I. Emerson, Deputy Adm'r for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and Nathan Siegel, Atty., OPA, all of Washington, D. C., and Paul L. Ross, Regional Price Adm'r, and John Masterton, Regional Litigation Atty., OPA, both of New York City (Karl E. Lachmann, of Washington, D. C., of counsel), for plaintiff-appellant-appellee.

McLaughlin & Stern, of New York City (Henry Cohn and Martin Lippman, both of New York City, of counsel), for defendant-appellant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit brought by the Administrator, Office of Price Administration, against 870 Seventh Avenue Corporation to restrain the defendant's violations of Maximum Price Regulation No. 2-1. The defendant conducts a large hotel in the City of New York known as The Park Central Hotel, and maintains in it five separate restaurants. The violations fall into two general classes: (1) Those which took place in connection with meals served to so-called Budget Plan tenants in defendant's Hawaiian Room, and (2) violations which took place in the four restaurants other than the Hawaiian Room, and consisted of overcharges on a number of items of food and drink.

### Overcharges in the Hawaiian Room

Between October 1, 1942 and October 1, 1943, the defendant rented certain suites.in the hotel under Budget Plan leases which entitled the tenants to the occupancy of their particular suites, and, in addition thereto, dinner nightly in the Hawaiian Room, laundry service not exceeding $2.50 per week per person, and the pressing of three suits or dresses per person a week. Until November, 1943, tenants were billed a flat sum each month, without indication of the various amounts allocated to rental, meals, and services, but allocation was made upon the defendant's books. In a typical case of a monthly charge of $150, $90 was allocated for rent, $21.66 for laundry for two, and $38.34 for meals and pressing service.

The OPA Rent Regulations became effective in November, 1943. Since that time, as required by them, defendant has billed its Budget Plan tenants as follows:

To rent for month ending...... $......
To meals, laundry & valet...... $......

Defendant also, in renewing leases in effect during the April 4-10, 1943 period, increased the total sum billed to the tenants each month, allocating the entire increase to "meals, laundry & valet."

The District Court held that the increase in the amount charged for "meals, laundry & valet" was an overcharge in violation of Restaurant Maximum Price Regulation 2-1, effective July 26, 1943. From this part of the judgment the defendant has appealed.

Section 2 of Restaurant MPR No. 2-1 provided: "Your maximum price for any food item or meal which you offered in the seven-day period beginning Sunday, April 4, 1943, and ending Saturday, April 10, 1943, is the highest price at which you offered the same food item or meal in that seven-day period." Section 1 provided that

a restaurant or hotel owner "must not offer or sell" any meal or food item at a price higher than the maximum price. It is the contention of the defendant that no "offer" was made in the week of April 4-10, 1943; that the "offer" to an individual tenant was made months before at the time when the individual Budget Plan lease was entered into. In support of this, defendant points out that Section 2 contains only the word "offered", whereas Section 1 has the broader phrase "offer or sell."

■ But Section 2 does not refer to the highest prices offered during April 4-10, 1943. It only refers to "the highest price at which" a food item or meal was offered during that period. The defendant offered meals in the Hawaiian Room during the week of April 4-10, 1943, and the fact that the price for the meals offered was fixed several months before is irrelevant. That price, just as the rate of rental received pursuant to a lease entered into some months before the Rent Regulations became effective, did not depend upon the time when the contract to provide meals at that price was entered into. Section No. 2-1 MPR fixed price ceilings at the highest prices actually established during the week of April 4-10, 1943, regardless of whether these prices were established by prior contract or otherwise.

The Price Administrator's Statement of Considerations published with Restaurant MPR 2 on June 29, 1944, indicates that restaurant prices were stabilized at the April, 1943, levels because by that time "controls had been established over raw food and labor costs and at the same time, restaurant prices in general had risen sufficiently to enable operators easily to absorb all intervening cost increases." From this the defendant argues that, since the Budget Plan leases were entered into months before April, 1943, to hold that price ceilings were at the level of the rates charged tenants under the Budget Plan leases which were in effect in April, 1943, would be to defeat the avowed purpose to give restaurant operators the benefit of the increase in price levels during the months prior to April, 1943. It is further argued that it would impose an unjust hardship upon the defendant to deny it the benefit of this increase.

■ The express language of the regulation, if clear and unambiguous, must override any general statement of its purpose. The language of Section 2 is clear and unambiguous, as has been indicated. Further, the Statement of Considerations included the following: "The accompanying Regulation * * * is primarily a regulation which freezes the maximum prices of eating and drinking places in the 48 states and the District of Columbia to the April 4-10, 1943 levels." The Price Administrator intended to stabilize prices at the level of prices actually charged during the base period whether those prices were fixed by an earlier contract or not, even though the effect in some cases might be to deny to restaurant operators the benefit of the increase in price levels during the months prior to April, 1943. The result here is undoubtedly harsh, but there is no greater hardship to this defendant in denying it the benefit of the increase than in tying maximum rents to an amount which may have been fixed by a lease negotiated years in the past. It is a lamentable fact that war does entail hardships, and even minor economic strictures are often more difficult to accept philosophically than is actual risk of life. Any order of general application my bring hardship to individuals. This is unfortunate, but it is not the function of this court to amend general administrative orders. Section 19 of Restaurant MPR 2-1 provides that the OPA may adjust the maximum prices for any eating establishment if the establishment "is operating under such hardship as to cause a substantial threat to the continuance of its operations". If the hardship to the defendant is sufficiently great, it may obtain relief under Section 19, but it can obtain no relief from this court.

■ Dinners in the Hawaiian Room were served to Budget Plan tenants and their guests from a menu which offered a choice of food with nothing to indicate any price for the food. Between April 4 and April 10, 1943, inclusive, a charge of $1.50 was made for a guest's dinner, except that the charge was $2 if the dinner included roast beef or steak. It is defendant's contention that, even if ceiling prices in the Hawaiian Room are fixed by the highest prices charged during the week of April 4-10, 1943, the highest prices charged were the prices for guests—$2 for steak or roast beef, and $1.50 for other meals. This contention cannot stand in the face of Section 9 of Restaurant MPR 2-1, which reads in part:

"Sec. 9.—Evasion. (1a) You must not evade the provisions of the regulation by

any scheme or device whatsoever. Some, but not all practices which will be regarded as evasive are:

\* \* \* \* \*

"(2) Withdrawing the offer, or increasing the price of any meal ticket, weekly rate, or other arrangement by which customers may buy food items or meals at less than the prices which they must pay when purchasing by item or meal."

The Budget Plan leases were arrangements by which tenants under those leases might buy meals at less than the price they must pay when purchasing by meal for their guests; but by raising the price of meals for these tenants to that of guests it deprives them of their right to buy food at less than the prices they would have had to pay when purchasing by meal and thus it violated Section 9(2), supra. This Regulation was evidently intended to fix the price of food to that at which it was sold under the same arrangement during the critical period.

■ The District Court ordered that the defendant be enjoined from further violations in the Hawaiian Room unless it should stipulate its intention to abide by the determination of the District Court and within 30 days make adjustments with its tenants for the excessive amounts collected; should appeal be taken by the defendant, the issuance of the injunction was to be stayed 30 days after the final determination of the Circuit Court of Appeals, provided the appeal were prompt and a reserve fund were set up to take care of refunds to tenants in the event the District Court were affirmed. The plaintiff contends that it was error to deny the immediate issue of an injunction against further violations in the Hawaiian Room. But, since it is obvious that the defendant never stipulated that it would abide by the determination of the District Court—or it would not have taken an appeal—the effect of the decision was merely to stay the issuance of the injunction until 30 days after the final determination of this court, whereupon it shall issue. Such a stay was clearly within the discretion of the District Court.

■ The plaintiff argues that the injunction should issue to restrain the reduction in quality of food served in the Hawaiian Room. This argument is based upon the cessation in serving of steaks and roast beef in that restaurant, and the in-

frequent serving of lamb chops. Defendant's explanation is that rationing prevents serving these items, and that the items now served are equally costly. Plaintiff answers that steaks were frequently served in all four of defendant's other restaurants, and contends that this negatives the explanation. The menus to substantiate this are not before us, and it may be that only a very limited quantity could be served in any of the other restaurants. It does seem doubtful whether rationing would completely prevent all serving of steak and roast beef, and whether some at least should not have been allocated to the Hawaiian Room, if obtainable. On the evidence before us, however, it cannot be said that the defendant's explanation is so inadequate that we may find the District Court guilty of an abuse of discretion in refusing an injunction restraining reduction in quality of food served in the Hawaiian Room. On the basis of the evidence presented, the judgment of the District Court in respect to the prices charged in the Hawaiian Room should be affirmed.

## Overcharges in the Remaining Restaurants

Overcharges in the four restaurants other than the Hawaiian Room were admitted. But the District Court found that these overcharges were the result of error, had been corrected, and that the defendant was in good faith attempting to comply with the Regulations. Under these circumstances the District Court thought an injunction was unnecessary, and dismissed the complaint in respect to alleged violations in the four restaurants. From this part of the judgment plaintiff has appealed.

■■ The only question in regard to the denial of an injunction in the case of the four restaurants is whether the District Court abused its discretion in not granting the relief asked for. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. The District Judge found that although the defendant made certain overcharges in the four restaurants, "such overcharges were not intentional but were due to error. They have since been corrected on all menus and the defendant is in good faith endeavoring to comply with the Regulation." He granted an injunction in regard to overcharges in the Hawaiian Room, which we have held justified. There were some forty-five admitted violations in the other restaurants, some of which occurred even after this suit was

brought. The defendant attempts to excuse its conduct by the large number of items on its menus, frequency in the change of its employees, resulting in an inexperienced staff, the far larger number of items as to which there were not overcharges and the fact that there were undercharges in some thirty items.

We think the excuse was insufficient. There was no inherent difficulty in comparing a proposed menu with menus during the period April 4-10, 1943, embracing the prices allowed by the Regulation, and the repeated violations of the Regulation in so many items could only have been the result of continued negligence. The Regulation was manifestly necessary to prevent the serious danger of widespread inflation and must be strictly enforced by the courts in order to support the vital efforts of the Price Administrator. United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 83 L.Ed. 1211. The defendant had no right to ignore the law until its negligent violations were called to its attention; it was in duty bound to keep its own watch upon its actions. Only by such means can the price regulations be made effective.

In spite of the fact that an injunction is a matter of equitable cognizance in which the good faith of the defendant plays an important part in the way of a defense, the negligence of its employees on repeated occasions in adherence to price ceilings seems to us to have required injunctive relief as to the four restaurants, as much as to the Hawaiian Room. In the latter case the court could have refused an injunction because the violations occurred under the bona fide belief that the Regulation permitted the increases. It might, under such circumstances, have limited its decree in respect to an injunction to a retention of jurisdiction for the purpose of issuing an injunction in the future if that should become necessary. It did not, however, do this. Even in Hecht v. Bowles, supra, where the difficulties of complying with price regulations were far greater than here and the efforts at compliance far more diligent, the Supreme Court remanded the case to the Circuit Court of Appeals for a determination of whether the District Court had abused its discretion in denying all relief. We think that under all the circumstances there was no reasonable ground for a dismissal of the complaint in respect to the violations in the four restaurants and that the case should be remanded with instructions to the District Court either to grant an injunction or to enter an order retaining the case on the docket with the right of the Administrator, on notice, to renew his application for injunctive relief should violations recur. See Hecht Co. v. Bowles, 321 U.S. 321, 328, 64 S.Ct. 587, 88 L.Ed. 754.

As to the violation in connection with the Hawaiian Room, the judgment of the District Court is affirmed. As to the violations in the other four restaurants it is reversed and the case remanded with instructions to proceed in conformity with this opinion.