**INDUSTRIAL UNION DEPARTMENT, AFL–CIO, et al., Appellants,**

v.

**BARBER–COLMAN COMPANY et al., Appellees.**

**W. Willard WIRTZ, Appellant,**

v.

**BARBER–COLMAN COMPANY et al., Appellees.**

**Nos. 18437, 18441.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 11, 1965.
Decided June 21, 1965.

Burger, Circuit Judge, dissented.

788

Mr. Michael H. Gottesman, Washington, D. C., with whom Messrs. David E. Feller and Jerry D. Anker, Washington, D. C., were on the brief, for appellants in No. 18437.

Miss Bessie Margolin, Asst. Sol., Dept. of Labor, with whom Messrs. Charles Donahue, Sol., Dept. of Labor, David C. Acheson, U. S. Atty., Sherman L. Cohn, Atty., Dept. of Justice, and Miss Sylvia S. Ellison, Atty., Dept. of Labor, were on the brief, for appellant in No. 18441.

Mr. Howard C. Westwood, Washington, D. C., with whom Miss Amy Ruth Mahin and Mr. R. Markham Ball, Washington, D. C., were on the brief, for appellees.

Messrs. James R. Patton, Jr., and F. Thomas Schornhorst, Washington, D. C., filed a brief on behalf of the Chamber of Commerce of the United States, as amicus curiae, urging affirmance.

Mr. C. William Taylor entered an appearance for appellee Bryant Chucking Grinder Co.

Before BAZELON, Chief Judge, and FAHY and BURGER, Circuit Judges.

BAZELON, Chief Judge:

The Walsh-Healey Public Contracts Act authorizes the Secretary of Labor to determine the "prevailing minimum wages"[1] paid employees in an industry, so that such wages may be required by the Government in supply contracts within that industry. The purpose is to avoid competitive advantages for firms which pay substandard labor wages.[2] In 1961, the Secretary instructed the Bureau of Labor Statistics (BLS) to survey the prevailing minimum wages in the machine tool industry. After completion of this survey and public hearings, the Secretary found a $1.80 an hour prevailing minimum wage for all industry employees covered by the Act, except for blueprint machine operators and draftsmen whose prevailing minimum wage was $1.65 an hour. The Secretary ordered that these minima be stipulated in Government contracts with the machine tool industry from May 23, 1963. On appeal in the District Court, this order was permanently enjoined, on the ground that the Act did not authorize the Secretary to establish more than one minimum wage for all employees in an industry.

In this court, appellees and the amicus, the United States Chamber of Commerce, contend that the authority to set more than one minimum wage is unprecedented in the administration of the Act, and that "if sustained, [it] would be unlimited in scope and would be * * * power to fix wages through occupational gerrymandering * * * [which would effect] a substitution of the federal executive for collective bargaining in the establishment of wage patterns."[3] The Secretary responds that this authority has often been exercised under the Act and that "it is a well known fact, confirmed by experience under this Act, that a single minimum wage determined for all of the workers of an industry, is frequently an unrealistic and wholly ineffectual means of promoting the * * statutory purposes, and may do nothing to obviate the competitive advantage of

---

1. 41 U.S.C. § 35(b) (1958).

2. See Wirtz v. Baldor Electric Co., 119 U.S.App.D.C. 122, 337 F.2d 518, 520 n. 1 (1964).

3. Brief for amicus, United States Chamber of Commerce, at pp. 2–3.

low-wage concerns tending to depress the industry's wage standards." [4]

The Secretary's determination that two minimum wages are required for the machine tool industry does not appear from the record, however, to be based on the policy he argues in this court. Rather, it appears that the Secretary set two wages to remedy short-comings in the BLS survey. At the public hearing, representatives of the National Machine Tool Builders Asssociation (NMBTA) pointed out that the questionnaire used in the BLS survey did not adequately define the types of employees covered by the Act, and that many employers failed to report the wages paid all covered employees. The Secretary found that this criticism "appear[s] to contain some merit insofar as blueprint machine operators and draftsmen are concerned" and that he was therefore "persuaded to exclude workers engaged in these two occupations from the scope of any determination based upon the BLS wage survey." But the Secretary further found that the NMBTA survey, which the association had conducted to challenge the accuracy of the BLS survey, provided adequate data to determine the prevailing minimum wage for the blueprint workers at $1.65 an hour. He stated, "Accordingly, it is not necessary that these workers be deprived of the protection afforded" by the Act.

The Secretary made no findings that the policy of the Act would be frustrated by including the blueprint machine operators and draftsmen in a single minimum wage for the machine tool industry. Nor did he find that the character of the blueprint workers' employment justified singling them out from the other industry workers for differential treatment. Moreover, the Secretary does not urge here that the Act permits different wages to rectify survey errors; and, indeed, the Secretary could as easily have rectified the error by determining a single minimum wage based on the NMBTA survey for blueprint workers and the BLS survey for all others. Thus the Secretary's only stated ground for establishing two minimum wages is insufficient even under his own interpretation of the Act.

Assuming, *arguendo*, that the Secretary could properly determine more than one minimum wage under the Act, this determination "cannot be upheld merely because findings might have been made and considerations disclosed which would justify [it] * * *. There must be such a responsible finding. * * * [T]he orderly functioning of the process of review requires that the grounds upon which the [Secretary] acted be clearly disclosed and adequately sustained." Securities & Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). We therefore remand the record in this case to the District Court with instructions to hold it in abeyance to permit further proceedings by the Secretary "with all reasonable expedition." [5] "Such a remand does not dismiss or terminate the administrative proceeding. If findings are lacking which may properly be made upon the evidence already received, the court does not require the evidence to be reheard. * * * If further evidence is necessary and available to supply the basis for findings on material points, that evidence may be taken." Ford Motor Co. v. N. L.R.B., 305 U.S. 364, 365, 374, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939). We affirm the Secretary's determination, however, that the reliability of the BLS survey was not effectively impeached, except regarding blueprint machine operators and draftsmen.

We do not reach the issue whether the Secretary has authority under the Act to establish more than one minimum wage for this industry. Because of its importance and complexity, this should not

4. Brief for appellant, Secretary of Labor, at p. 35.

5. Metlakatla Indian Community v. Egan, 369 U.S. 45, 59, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962).

be decided on speculative facts as an abstract question.[6] The Secretary's primary argument, that the purposes of the Act would be frustrated in many industries by establishing a single minimum wage, can properly be evaluated only where, unlike here, the record furnishes a factual basis for that argument.

■ It is of course possible that, in further proceedings before the Secretary or this court, only one minimum wage will be established. This single minimum wage would most likely be calculated at some figure different from either wage previously determined. Thus we cannot affirm the Secretary's determination of the $1.80 wage and remand merely for reconsideration of the $1.65 wage, as he suggests in a supplemental memorandum.

■■ We are, however, aware of the unfortunate consequences of depriving all industry employees of the Act's protection during these protracted proceedings. We are also cognizant that "court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice" but must attain common ends "through coordinated action."[7] Though we see no alternative to postponing effectiveness of any minimum wage determination in this industry pending further proceedings, "in specific cases * * * it is consonant with judicial administration and fairness not to be balked by the undesirability of retroactive action * * *." Addison v. Holly Hill Fruit Products Co., 322 U.S. 607, 622, 64 S.Ct. 1215, 1223, 88 L.Ed. 1488 (1944).[8] On this remand, there-

fore, the Secretary may consider what retroactive effect, if any, should equitably be given his final determination.[9]

The record is remanded to the District Court for proceedings consistent with this opinion.

So ordered.

BURGER, Circuit Judge (dissenting):

I dissent because the Court declines to reach the central issue which brings this case here, i. e., whether Congress authorized the Secretary of Labor to fix more than one minimum wage for an industry covered by the Walsh-Healey Act. Rather than reach this central issue the Court remands the problem to the Secretary to ask the reasons why the Secretary fixed two minima, rather than one. Since the Court remands to ask the Secretary his reasons for two minima rather than one it might be well to inquire whether three, five or seven minima are, in the Secretary's view, permissible under the Act.

This central question is not a "speculative" or "abstract question" as the majority suggests; on the contrary it is the only reason why the case is here. The Secretary's argument that the purposes of the Walsh-Healey Act would be frustrated as to some industries by establishing a single minimum wage rate demonstrates what he thinks the appeal involves. If the Secretary does not have the challenged power under the statute our inquiry as to his reasons is irrelevant and we ought not temporize on an important issue which inevitably will return here for decision.

6. See Public Affairs Associates v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Cf. Adler v. Board of Public Education of the City of New York, 342 U.S. 485, 497, 72 S.Ct. 380, (1952) (dissenting opinion).

7. United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211 (1939).

8. See Atlantic Coast Line R. Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935); United States v. Morgan, supra.

9. Compare City of New Orleans v. Texas & N. O. R. Co., 195 F.2d 882, 887 (5th Cir. 1952); Comment, Prospective Overruling and Retroactive Application in the Federal Courts, 71 YALE L.J. 907, 933 et seq. (1962).