**WILLIAM N. FEINSTEIN & COMPANY, Inc., et al., Plaintiffs,**

v.

**UNITED STATES and the Interstate Commerce Commission, Defendants,**

and

**The Baltimore & Ohio Railroad Company et al., Interveners.**

United States District Court
S. D. New York.

Oct. 4, 1962.

Robert W. Ginnane, Gen. Counsel, I. K. Hay, Associate Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

A. C. Armstrong, Baltimore, Md., Richard E. Costello, J. Edgard McDonald, New York City, Edward A. Kaier, Philadelphia, Pa., for Railroad Interveners; Edward F. Butler, New York City, of counsel.

Bernstein, Weiss, Tomson Hammer & Parter, New York City, for Complainant Petitioner; William J. Angello, Jr., New York City, of counsel.

RYAN, Chief Justice.

William N. Feinstein & Co., Inc.,[1] files this suit to review, set aside and annul a

---

1. The complainants in the proceedings before the Commission which resulted in its decision in 313 ICC 783 were William N. Feinstein and Bernard Fatell, copart-

ners doing business under the name of William N. Feinstein & Co., dealers in perishable produce in New York City. Subsequent to the above decision, the assets of said partnership, including its claims and choses in action, were as-

decision of the Interstate Commerce Commission (5 U.S.C.A. §§ 1001–1011, 49 U.S.C.A. § 17(9) and 28 U.S.C. § 1398 and 2321–2323). The challenged decision (William N. Feinstein & Co. v. New York Central Railroad Company, 313 ICC 783) found that certain charges exacted from plaintiff's assignor by the New York Central Railroad for the unloading of onions [2] consigned to the latter's Pier 17, New York City, were not unjust, unreasonable or otherwise unlawful. Plaintiff contends that this finding by the Commission was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and otherwise unlawful. The Baltimore & Ohio, Erie Lackawanna, New York Central and Pennsylvania Railroads (terminal carriers of fresh fruits and vegetables destined for New York City) were permitted by an order dated June 26, 1962 to intervene in this suit in support of the Commission's decision.

The background and essential facts of this suit are not in dispute. Substantially, all carload shipments of fresh fruits and vegetables shipped to New York City from the south and west during the period in issue in the proceedings in 313 ICC 783 were delivered to the pier stations [3] of the terminal carriers serving New York, the interveners herein. These perishable shipments were moved by rail to the Jersey side of the Hudson River where the freight cars were placed on barges, floated across the river and then either switched to the carriers' team tracks in Manhattan or docked, as the great majority were, at the carriers' pier stations. The New York Central Railroad was and is the only terminal carrier serving New York which has direct rail lines to its 33rd Street team tracks

in Manhattan. It, however, delivered many carloads of fresh fruits and vegetables, including the onion shipments in issue, to its terminal Pier 17. When the car floats were docked at the appropriate piers, their contents were unloaded by the carriers and placed in designated areas on the pier floors. The consignees were not permitted themselves to unload their produce and access was first given them after unloading. The carriers provided the pier stations with special sale and auction facilities, whereby much of the produce was immediately disposed of by the consignees.

No charge for unloading perishable produce at these pier stations in addition to the line haul rate had ever been assessed by the terminal carriers serving New York until 1947 when, for the first time, these carriers filed schedules to become effective June 1, 1947 which provided for a separate charge for unloading fruits and vegetables consigned to their New York pier stations. No charge was sought for unloading commodities other than fruits and vegetables at these same pier stations during the entire period in issue in the proceedings in 313 ICC 783.

Numerous shippers, shipping organizations, State Commissions, the Port of Authority of New York and other interests protested against this charge on the ground that the pier unloading performed by the carriers was an integral part of the transportation service and necessarily included in the line haul rate. Following these protests, the Commission suspended the operation of the proposed charges (49 U.S.C.A. § 15(7)) and ordered an investigation to determine their lawfulness (Investigation and Suspension Docket No. 5500). After a hearing before an examiner and oral argument and

---

signed to William N. Feinstein & Co., Inc. [a New York corporation with principal office and place of business within the Southern District of New York] which, as assignee, filed the suit now before us.

2. The onion shipments (approximately 549 carloads) originated in Texas, Colorado, Wisconsin, Minnesota, Michigan, Indiana, Ohio, New York and several far western

states. The complainants were owners of the majority of them, joint owners with the shipper of others and some were handled on consignment.

3. These pier stations, leased to such carriers by the City of New York, are strategically located adjacent to the Washington Market, one of New York's larger fruit and vegetable markets.

reargument, the Commission on October 4, 1948 (Unloading Charges on Fruits and Vegetables at New York and Philadelphia, 272 ICC 648) found that the proposed charges ranging from $1.95 to $2.60 per net ton for the unloading of fresh fruits and vegetables at the pier stations in New York were just and reasonable. The charge approved for unloading onions was $1.95. The Commission concluded that such charges were substantially in the same category as those for switching, transit, refrigeration and other specific services for which separate charges were authorized, and that the then expense of unloading was such that the carriers should no longer be required to furnish it without compensation. The order of suspension previously entered by the Commission was vacated and the proceedings were discontinued. The charges approved in 272 ICC 648 became effective on November 1, 1948. Upon petition of the protestant shipping, marketing and port interest, the proceedings in Investigation and Suspension Docket No. 5500 were reopened and additional hearings were held. As a result thereof, the Commission on May 7, 1953 (Unloading Charges on Fruits and Vegetables at New York and Philadelphia, 286 I.C.C. 119) found that the charges approved in 272 ICC 648 were not shown to be just and reasonable and ordered them cancelled without prejudice to establishment of charges ranging from $1.05 to $1.65 per net ton including a charge of $1.05 for unloading onions. The Commission, upon the amplified record, concluded that the cost of unloading should be borne partly by the shipper and partly by the carriers. The reduced charges thus approved became effective on July 3, 1952.

Suit was then filed by the Florida Citrus Commission in the United States District Court for the Southern District of Florida to set aside the Commission's decision in 286 ICC 119 and the orders entered pursuant thereto. The three-Judge Court upheld the Commission and on August 31, 1953 dismissed the suit (Florida Citrus Commission v. United States, D.C.,

114 F.Supp. 420). On appeal, the Supreme Court of the United States on June 7, 1954 vacated the judgment of the Florida District Court and remanded the matter to the Commission for appropriate findings, concluding that the Commission in 286 ICC 119 had not adequately explained its departure from prior norms and had not sufficiently spelled out the legal basis of its decision (Secretary of Agriculture v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015). The Court at page 653, 74 S.Ct. at page 831, stated:

> "We do not know whether the Commission has disregarded its own findings that the unloading here is a prerequisite to delivery of the goods; or whether, in order to meet an unusual situation, the Commission has modified the normal doctrine that delivery is the responsibility of the carrier * * * or whether the Commission * * * has here deemed irrelevant the prevailing rule of its prior cases that a service necessarily encompassed by the line-haul rate cannot be separately restated without examining the sufficiency of the line-haul rate to cover it."

Upon supplemental hearings and further review of the record in compliance with the mandate of the Supreme Court, the Commission on June 28, 1956 (Unloading Fruits and Vegetables at New York and Philadelphia, 298 ICC 637) found that the charges in issue were not shown to be just and reasonable and ordered the schedule of charges to be cancelled as of August 16, 1956. Upon application of the carriers, however, the cancellation date was extended to October 16, 1956. In reaching its ultimate finding of unlawfulness in 298 ICC 637, the Commission concluded that the applicable tariffs provided that the line haul rate applied to and included delivery and that delivery at the pier stations was not effected until the contents were unloaded by the carriers and placed on the pier floor, that team track delivery was not a valid option to pier delivery and that,

thus, pier unloading was not an optional service for which an extra charge could validly be assessed, that the making of a separate charge for this unloading which is an element of terminal service was not compatible with the basic principle of rate construction observed in this country and was inconsistent with the treatment of this service and the conclusions reached in the several proceedings in which the fruit and vegetable rates to New York were considered, that the addition of these charges disrupted the integrity of the rate groups, both at New York and Philadelphia, and destroyed the uniformity of charges in the comprehensive New York metropolitan area, that the exaction of the unloading charge, in addition to the line haul rate, produced total charges for line haul transportation to the pier stations which were technically in violation of the long-and-short haul clause of Section 4 and that the labor cost of unloading the traffic in issue was only about half of that for unloading other freight delivered at the same or similar points of delivery for which no separate charge was made.

Following the determination of the Commission in 298 ICC 637, plaintiff's assignor on December 3, 1956 filed suit in the United States District Court for the Southern District of New York (49 U.S.C.A. §§ 8 and 9) against the New York Central Railroad to recover as damages the charges it had paid the latter for the unloading of onions consigned to the Central's Pier 17, New York City. Plaintiff alleged that the assessment of the unloading charge was unlawful pursuant to the determination of the United States Supreme Court in Secretary of Agriculture v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015, and the determination of the Commission in 298 ICC 637. This suit resulted in an opinion and judgment (Feinstein v. New York Central Railroad, D.C., 159 F.Supp. 460) in which the Court dismissed the complaint with respect to all shipments unloaded more than two years prior to the filing of the suit (such shipments being barred by the applicable period of limita-

tion [49 U.S.C.A. § 16(3)]) and stayed judgment as to all claims within the statutory period until the Commission decided whether the unloading charge was unjust and unreasonable when paid. The Court held that although the Commission's order of 1956 entered pursuant to its decision in 298 ICC 637 put an end to the unloading charge for the future, it did not follow that it also decided that they had been unlawful when paid and that, thus, the plaintiff's claim for reparation required an express finding by the Commission that the unloading charge was unjust and unreasonable during the period not barred by limitation (December 3, 1954 to December 3, 1956). The judgment, therefore, gave plaintiff's assignor sixty days in which to file a complaint with the Commission seeking such a determination, otherwise the plaintiff's claim in its entirety would be dismissed.

Thereafter, on May 2, 1958, plaintiffs in the above suit filed a complaint with the Commission naming the New York Central Railroad as defendant and alleging that the unloading charge collected by the latter on carload shipments of onions consigned to Pier 17, New York City, between November 1, 1948 and October 16, 1956, was unlawful under Sections 1 and 6, and the long-and-short haul provisions of Section 4 of the Interstate Commerce Act, in that the said unloading charge constituted an additional assessment for a service which was included in the line haul transportation of the carrier and covered by the line haul rate. It was further alleged that the findings and conclusion of the Commission in Unloading Charges on Fruits and Vegetables at New York and Philadelphia, 298 ICC 637, terminating said unloading charge as of October 16, 1956, was retroactive in effect and applicable to the period for which reparation was sought. The Erie Lackawanna, Baltimore & Ohio, and the Pennsylvania Railroads were permitted by order dated February 18, 1959 to intervene in the proceedings in support of the assailed charges. The Commission on November 19, 1958 dismissed the complaint before it to the extent that it

sought a determination of the lawfulness of the unloading charge prior to December 3, 1954 as to which period the District Court had dismissed the complaint before it. After proceedings had before the Commission, its Division 3 rendered the decision challenged by this suit (313 ICC 783) in which it held "that the assailed charges, considered by themselves or as part of the total transportation charges collected in these shipments are not shown to have been unjust, unreasonable or otherwise unlawful." In support of this finding, the Commission concluded that the special facilities and services provided at the terminal piers, in effect, transformed them into market places most favorable to the produce industry so that produce was not consigned to the pier stations merely to effect delivery but primarily for buying and selling by means of such special facilities, that the expense of providing the facilities and services for unloading these onions at Pier 17 substantially exceeded the assailed charges and that the total revenue for the traffic in question, including the unloading charges, in practically all instances failed to yield the out-of-pocket cost of the service, that the evidence now before the Commission did not indicate that the team track facilities of defendant, New York Central Railroad, in Manhattan were inadequate to accommodate any of the complainants' shipments for which delivery at that point was desired and thus that, when these shipments moved, the complainants had the option of taking team track delivery without charge in addition to the line haul rates or of requesting pier delivery subject to the additional unloading charge, that a special situation existed at Pier 17 which permitted departure from the general rule that delivery must permit access to the freight without a charge in addition to the line haul rate and that the evidence before it afforded no basis for a finding that there was a violation of the long-and-short haul provisions of the Interstate Commerce Act. Plaintiff's assignor then petitioned the Commission to re-consider its decision, which petition was denied on October 20, 1961.

Thereupon, William N. Feinstein & Co., Inc. as the assignee of William N. Feinstein & Co. (the complainants in 313 ICC 783) filed the suit now before us, seeking to review, annul and set aside the report and the order of the Commission decided May 31, 1961 (311 ICC 783) and the order of the Commission dated October 20, 1961 denying the petition for reconsideration.

■ The Commission decision is correctly dealt with procedurally as is required of Commission orders granting or denying claims for reparation and, therefore, is properly reviewable by a One-Judge District Court. (United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1454; Eastern Freight-Ways, Inc. v. United States, D.C., 170 F.Supp. 848.)

■ The scope of judicial review of independent administrative bodies, such as the Commission, is now well settled and limits the issue which this suit presents to the Court. It is for us to consider and decide only whether the decision and orders under review are free from error of law, and are based on adequate findings supported by substantial evidence. (Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Mississippi Valley Barge Line v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; I. C. C. v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821.) In determining even this narrow issue, we may not substitute our judgment or discretion for that of the Commission on questions of credibility, weight of evidence, and the inferences to be drawn from the facts deemed proven. Thus, while the Court may properly pass on the reasonableness of a factual finding, it may not pass on its rightness (Radio Officers, etc. v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed.

455; Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586; Corn Products Refining Co. v. F. T. C., 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320).

■ One of the primary grounds plaintiff asserts for setting aside and annulling the decision under review is the alleged inconsistency of the decision's ultimate conclusion and certain of its subsidiary findings with the Commission's prior determination in I & S Docket 5500 (298 ICC 637). It is the plaintiff's position that the facts elicited before the Commission in both cases were identical and that, therefore, the different findings and conclusion set forth in 313 ICC 783 are by their very nature illogical, arbitrary and illegal. This contention is not sustainable. The mere fact that a Commission decision may be inconsistent with a prior Commission determination is not a valid ground for its reversal. (Federal Communications Commission v. W. O. K. O., Inc., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204.) An administrative body, such as the Commission, is not required to deal with a particular case as it has dealt with a prior case that seems similar since diverse factors may be present in the second determination which the Commission feels, in the exercise of its specialized experience, justify a different result. In the situation presented here, the record in the prior case might have been inadequate or the Commission might have been wrong in its first determination. We, however, are not obliged to reconcile the conclusions reached in the decision under review with those reached in the decision in 292 ICC 637 as the record in the latter proceeding is not before us and a comparison between that record and the one that underlies the decision in 313 ICC 783 is impossible. We can only look at the record before us and, if on the basis thereof we determine that the Commission's decision is not arbitrary but based on adequate findings which are supported by substantial evidence, it must be left undisturbed. (Tagg Brothers & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524;

Virginian R.R. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463.) In any event, it is clear that the earlier Commission determination did not preclude the conclusions and findings reached by the Commission in the decision under review. The burden of proof in each case rested on different parties. As the earlier case was a suspension proceeding (49 U.S.C.A. § 15(7)), the burden there was on the proponents of the unloading charges (the interveners herein) to show that the charges were just, reasonable and otherwise lawful; while here in the case under review, the burden was on the complainant (Feinstein) to show that the unloading charge was unlawful when assessed. Clearly, the complainant in 313 ICC 783 could not sustain his burden by showing that the interveners failed to meet theirs in the earlier case. Neither the Supreme Court in Secretary of Agriculture v. United States, supra, nor the Commission in 298 ICC 637 found that the assailed unloading charges were unlawful when assessed. The Commission in 298 ICC 637, in which the interveners had the burden of proof, merely held that the charges were not shown to be just and reasonable for future application. Such a finding of unlawfulness for the future, however, did not logically compel a subsequent finding of unlawfulness for the past. As was stated by the Supreme Court in Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U.S. 479, 486, 34 S.Ct. 641, 58 L.Ed. 1055:

"* * * awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private "and the other public. One is made by the Commission in its quasi judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi-legislative capacity, to prevent future injury to the public."

Thus, there was extant no prior finding which would bind the Commission in 313 ICC 783 to find that the unloading charge was unlawful when paid.

■ The Commission in its decision under review based its ultimate conclusion that the assailed charges "are not shown to be unjust, unreasonable or otherwise unlawful," in part on its finding that the cost of unloading the onions in question substantially exceeded the assailed charges and that the total revenue from the traffic in question, including the unloading charges in practically all instances, failed to yield the out-of-pocket costs of the unloading service. Plaintiff contends that evidence of the cost of the unloading service and the level of the line haul rates should have been excluded and that the Commission, by making the above finding based on such evidence to support its ultimate conclusion, was guilty of an error of law. Plaintiff argues that the only issue which was properly before the Commission in 313 ICC 783 was whether the unloading charge was lawful when paid during the period left open by the Statute of Limitations and that, thus, the reasonableness of the unloading charge in a quantum sense was immaterial.

The defendants and interveners contend that Judge Learned Hand in his referring opinion (Feinstein v. New York Central Railroad, supra) specifically held that the Commission might allow the unloading charge if the total transportation charge was not excessive for the services rendered. In support of this proposition, they point to page 463 of 159 F.Supp. wherein Judge Learned Hand, in interpreting the Supreme Court's decision in Secretary of Agriculture v. United States, supra, stated:

"I can only conclude that the Court refused to hold that the charges were necessarily unlawful, and implied that the Commission might allow them as an addition to the line-haul rate if it found that, all things considered they, plus the line-haul rate were no more than 'just and reasonable' for the services rendered."

Defendants and interveners argue that, in view of the above, the Commission's receipt of evidence of cost and level of the line haul rate and its findings based

thereon, was fully responsive to Judge Hand's holding and thus proper.

The proceeding before the Commission in 313 ICC 783 was not truly a reparation proceeding but one in aid of a previously filed civil damage suit wherein the expert determination of the Commission as to the propriety of the assailed unloading charge when paid was sought. The Commission was obliged to determine this propriety, certainly in the first instance, not by a standard of reasonableness of the charge in a specified amount but by a standard of lawfulness of a charge in any amount. If the exaction of any charge was determined lawful, then the Commission might properly pass on the reasonableness of the amount, to aid the District Court in its determination as to the quantum of damage sustained by Feinstein, if any, but if the charge was unlawful or its lawfulness left undetermined, the reasonableness in amount of the charge could not sustain its exaction. (Chicago, Milwaukee, St. Paul R.R. Co. v. Alouette, etc., 9 Cir., 253 F.2d 449; United States v. I. C. C., 91 U.S.App.D.C. 178, 198 F.2d 958.) Neither the language of Judge Learned Hand quoted above, his opinion as a whole nor the opinion of the Supreme Court in Secretary of Agriculture v. United States, supra, supports the proposition that the reasonableness in amount of the unloading charge would support its assessment if the exaction of such charge were unlawful. In fact, Judge Learned Hand recognized that the issue primarily before the Commission would be the lawfulness of the charge when he stated at page 462 of 159 F.Supp.:

"The first point to decide is whether the plaintiffs' claim for reparations requires an express finding by the Commission that the unloading charges collected by the defendant were *unlawful,* during the period not barred by the Statute of Limitations (§ 16(3) of the Act, 49 U.S.C.A. § 16(3) * * *".

and again on page 467 of 159 F.Supp.:

"If, however, the action is stayed until the Commission decides that the charge was *unlawful* between De-

cember 3, 1954 and December 3, 1956, the recovery upon the common law count becomes subject to precisely the same conditions as the count under Section 9."

It is clear, therefore, that the primary issue before the Commission in 313 ICC 783 was whether the unloading charge could lawfully be exacted in any amount.

In order to sustain the Commission, we must find that the Commission has set forth in its decision adequate findings which support the lawfulness of the exacting of the unloading charge and that these findings have warrant in the record and a rational basis in law. In the absence of the above, the Commission's decision would rest solely on its findings supporting the reasonableness in amount of the assailed charge and, although such findings have strong support in the record, they could not uphold by themselves the exaction of the unloading charge.

It is undisputed that Feinstein and all other consignees during the period involved in the decision under review were not permitted access to their goods until after they were unloaded by the carriers on the pier floors. The complainant (Feinstein) argued before the Commission and plaintiff argues here that, because of this denial of access, unloading was within the carriers' line haul obligation and thus was a service for which a separate charge in addition to the line haul rate could not validly be made. The Commission in 313 ICC 783, however, made findings to the effect that produce was not sent to the Pier Stations merely to effect delivery to the consignees but primarily for buying and selling by means of the special sale and auction facilities provided there; that when the complainant's (Feinstein) shipments were moved, he had the option of taking team track delivery without charge in addition to the line haul rates, or of requesting pier delivery with the concentrated extraordinary services subject to the additional unloading charge, and that from the foregoing a special situation similar to that in New England Coal & Coke Co. v. Norfolk & W. Ry Co., 33 ICC

276, existed at Pier 17 which permitted departure from the general rule that delivery must generally permit access to the freight without charge in addition to the line haul rate.

Because of the special situation at Pier 17, the Commission deemed pier unloading of the onion shipments not to be a part of the carrier's line haul obligation covered by the line haul rate, and viewed the assessment of a charge for such unloading " * * * in the same category as the charge for unloading at other station facilities and team tracks in the New York rate groups when performed at the request of the consignee." The Commission's finding of a special situation at Pier 17 is based on two subsidiary findings, namely that produce was sent to the pier stations primarily for use of the special facilities existing there and that at the time Feinstein's shipments moved he had the option of taking team track delivery in lieu of pier delivery. These findings are inferences drawn from the evidence before the Commission and, as such, we may not substitute our judgment as to whether such an inference is right or whether a different inference would be better supported. Our inquiry can only be whether from the evidence before the Commission, the drawing of such inferences were reasonable. We find they were.

That departure from the general rule of access would be legally justified in circumstances like those found by the Commission, was recognized by the Supreme Court in Secretary of Agriculture v. United States, supra, wherein the Court 347 U.S. at page 647, 74 S.Ct. at page 828 stated:

"The general rule is that it is the responsibility of the carrier, as part of the transportation service covered by the line-haul rate 'to deliver' the goods by placing them in such a position as to make them accessible to the consignee * * * [but] these are not inflexible rules. The law recognizes and reflects the practicalities of transportation by rail and the diversities to which they give rise."

The Court then went on to cite New England Coal & Coke Co. v. Norfolk & Western Ry Co., supra, as authority for departing in unusual circumstances from the general rule.

Plaintiff argues that the Commission's finding that team track delivery was a valid option to pier delivery is arbitrary and illegal in that the Commission in 313 ICC 783 had before it an application for a rule universally applicable to all shipments and that unless the Commission could say that team track facilities were available for all, it could not say there was room for any. No such finding as plaintiff contends was required.

■ It is the railroad's duty under the Interstate Commerce Act (49 U.S.C.A. § 1(4)) to provide transportation upon reasonable request therefor. Under the definition of "transportation", the Act (49 U.S.C.A. § 1(3) (a)) includes all "instrumentalities and facilities of shipment or carriage." Such instrumentalities and facilities include team tracks and pier facilities. Thus, the duty of the New York Central and the other terminal carriers serving New York was not to furnish team track facilities for all who might possibly use them but to furnish team track facilities to meet the reasonable demand therefor. As we have noted, the complainant had the burden of proof before the Commission in the decision under review and in order to refute the validity of team track delivery as an option to pier delivery, it was incumbent upon him to show that team track delivery facilities for the delivery of fresh fruits and vegetables were not available to meet the reasonable demands for such facilities. This burden complainant failed to meet. There is no evidence in the record that any shipper or consignee who requested team track delivery during the period involved in 313 ICC 783 found it unavailable. Thus, it can only be inferred that there was room at the team tracks for all who wanted it. Whether the above two findings constitute, as the Commission found, such an unusual situation as to require an exception to the general rule that delivery must permit access to the freight without charge in addition to the line haul rate, is a question peculiarly within the specialized knowledge and experience of the Commission. As it is a question of such a character and as the findings on which the Commission resolved such issue in favor of exception have warrant in the record and a rational basis in law, we must sustain it.

■ Finally, plaintiff contends that the Commission committed legal error in the decision under review by its failure to find that the assessment of the unloading charge created a rate not legally established, an *ad hoc* amendment of the line haul rate, a violation of the "long and short haul" provisions of the Interstate Commerce Act, and a disruption of the rate grouping principle. The above averments of unlawfulness depend for any color of validity upon the inclusion of the service of unloading within the line haul obligation of the carrier. The Commission, however, in the decision under review, in effect, found that because of the special situation existing at Pier 17, the unloading of the onion shipments in question was not a part of the line haul obligation of the carrier and thus was not covered by the line haul rate. This finding we have sustained.

■ We agree with the plaintiff that the Commission's reliance on Ex parte No. 212, 304 (CC 298) was misplaced. The approval of the unloading charge in that case primarily turned in part on the fact that the 1958 tariff, which included separate charges for pier unloading, applied to all commodities unloaded at the pier stations and gave the consignees the option to do their own pier unloading— two factors not true in the period involved in the decision under review. The Commission's reliance on Ex parte 212, however, was not vital to its decision. What was controlling was the Commission's finding of a special situation at Pier 17. This finding we have found supports the lawfulness of the exaction of the assailed charge and as it has support in the record and a rational basis in law, sustains the decision under review.

We have considered the other objections urged by the plaintiff and find them either to be variations of arguments discussed above or without merit. Reviewing the record as a whole, the decision of the Commission is free from legal error and is based on adequate findings which are supported by substantial evidence. The decision, therefore, must be affirmed.

The suit is dismissed upon the merits; it is so ordered and judgment shall be so entered forthwith by the Clerk of the Court.