The **WICHITA BOARD OF TRADE**
**et al., Plaintiffs,**

v.

The **UNITED STATES** of America and
**Interstate Commerce Commission,**
**Defendants.**

**Civ. A. No. W–4730.**

United States District Court,
D. Kansas.

May 26, 1972.

Glaves & Weil, Jack Glaves, Wichita, Kan., Belnap, McCarthy, Spencer, Sweeney & Harkaway, Harold E. Spencer, Daniel J. Sweeney, Chicago, Ill., for plaintiffs.

Robert J. Roth, U. S. Atty., Richard Oxandale, Asst. U. S. Atty., Wichita, Kan., for the United States and I.C.C.

Charles W. Bucy, Asst. Gen. Counsel, Kenneth H. Vail, Atty., U. S. Dept. of Agriculture, Washington, D. C., for defendants.

Fritz R. Kahn, Gen. Counsel, Hanford O'Hara, Atty., Washington, D. C., for I.C.C.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Charles W. Harris, of Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., for intervenors Atchison, Topeka & Santa Fe Railway Co. and others.

William F. Cottrell and Christopher A. Mills, Chicago, Ill., for intervenor railroads.

BARRETT, Circuit Judge, and THEIS and O'CONNOR, District Judges.

## OPINION OF THE COURT

PER CURIAM.

This is an action to enjoin, annul, set aside, and suspend orders of the Interstate Commerce Commission entered by the Commission, Division 2, on April 16, 1971, and by the Commission en banc on September 21, 1971, in proceedings entitled Investigation and Suspension Docket No. 8548, Inspection in Transit, Grain and Grain Products, reported at 339 I.C.C. 364 and 340 I.C.C. 69 respectively. A three-judge court was convened to hear the case. The suit is brought pursuant to the provisions of Sections 1336, 1398, 2284 and 2321–2325 of Title 28 U.S.C.

By the reports and orders here assailed, the Commission has found just

and reasonable the establishment of tariff provisions applicable throughout the West at the rate of $13.36 per car for the first in-transit inspection services historically provided by the rail carriers under the line-haul rates. The Commission did not require a reduction in the line-haul rates in relation to the reduced service.

The in-transit inspection service with which we are here concerned has reference to the practice of stopping railroad cars loaded with grain and grain products and placing them on railroad track facilities for the purpose of permitting inspection of the contents of the car, awaiting disposition orders from shippers after inspection, and the subsequent movement of the railroad car. The sample or samples tested determine the official grade of the contents of the car for the purpose of establishing its value at market.

This transit service has been historically provided by the rail carriers in the West as part of the line-haul rates. Until 1968, federal law required official federal inspection and sampling. That function was performed by federal officials. That requirement was eliminated by Congress in 1968. 82 Stat. 761, 7 U.S.C. § 71 et seq. The primary purpose of Congress was to effect an increased utilization of rail cars. In its brief the Commission noted that car shortages on a nation-wide basis was a grave problem and that "the Commission's action here represents a determination to employ all rational and lawful means to attempt to alleviate the difficulty."

After extensive hearings the Commission found that: (1) the proposed charges do not apply in any instance where applicable line-haul rates plus the charge would exceed the maximum reasonable rates set forth in Grain and Grain Products, 205 I.C.C. 301 (1934), 215 I.C.C. 83 (1936), (2) inspection of grain is no longer a mandatory requirement of federal law, (3) there is a need for inspection at some point in the grain marketing process, but inspection in-transit is not essential, and (4) grain inspection in-transit is an "accessorial" service for which a charge separate from the basic line-haul charges may be properly assessed. The Commission then found that the proposed charges were just and reasonable in that the railroads established by substantial evidence that the costs associated with in-transit inspection correspond to the level of the proposed charges and that delays resulting from in-transit inspection amount to more than three days per car. There is substantial evidence in support thereof.

The Commission recognized that the Western railroads were not presently assessing a charge in their line-haul rates for the first stop for inspection. The protestants here contend that under these circumstances the railroads could not segregate the inspection service and assign to it a separate charge without presenting substantial evidence that the new aggregate rate, composed of the line-haul plus inspection-transit rates, represent a just and reasonable rate for all of the services.

In its discussion and conclusions, the Commission found that: "A requirement that the reasonableness of the proposed charges cannot be determined without 'reference to the line-haul rates, the services furnished thereunder, and the cost thereof' effectively precludes respondents from ever establishing a separate charge for the accessorial first stop for inspection regardless of the need for such a charge. This inability was not present in the cited proceeding (Transit Charges, Southern Territory, 332 I.C.C. 664 [1968])—However, there is a more significant distinguishing feature that persuades us that the prior decision is not controlling here. That difference is that the line-haul rate applicable to any movement of grain within the West when coupled with the proposed charge is less than the maximum reasonable level determined by this Commission." In its brief the Commission refers to the "extreme difficulty" involved in putting

together thousands of such rates for the purpose of determining the reasonableness of a charge for a separate accessorial service. The Commission ultimately justified its rationale predicated upon the maximum level of rates which it established some 35 years ago in its Docket No. 17000 proceedings, Grain and Grain Products, *supra*.

While purporting to "distinguish" the instant decision from its prior decisions, the Commission *discovered* that which had been known for years: the maximum reasonable rates established in its Docket No. 17000 cases. This discovery suddenly became a "significant distinguishing feature" in its decision here.

■ There may be facts and circumstances justifying a Commission reversal of its well established rule that whenever a proposal is made for the establishment of an additional charge for a service that has been provided at the line-haul rates, the reasonableness of the proposed charge may not be divorced from the line-haul rates, the services thereunder, and the cost thereof. Transit Charges, Southern Territory, 332 I.C.C. 664 (1968); Grand Forks Chamber of Commerce, et al. v. Great Northern Railway Company, et al., 321 I.C.C. 356 (1963); Investigation and Suspension Docket No. 5146, Terminal Charges at Pacific Coast Ports, 255 I.C.C. 673 (1943); Unloading Lumber to New York Harbor, 256 I.C.C. 463 (1943); Reconsignment Case No. 3, 53 I.C.C. 455 (1919). The difficulty generated by the Commission's ruling here is that instead of repudiating its long established rule that it will not allow a separate charge for an accessorial service previously performed as part of the line-haul rates without substantial evidence that such an additional charge is justified measured against the overall services rendered and the overall reasonableness of the increased line-haul rate resulting therefrom—which may be legally justified—it has attempted to "distinguish" this case from its prior rulings. In our judgment the Commission

has failed in this respect. In effect, the Commission "excuses" the respondent railroads in the case before us from meeting the substantial proof requirement in satisfaction of its long established rule predicated upon the rail carriers "inability" to meet that obligation here. In other words, the rule is viable and applicable where the Commission determines that the railroads are "able" to carry the burden of proof but it is not applicable in those instances where the Commission determines that the rail carriers are unable to do so. Such a departure is impermissible. Secretary of Agriculture v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015 (1954), is dispositive of this issue. There, as here, the Commission approved special charges, in addition to the existing line-haul rates, for unloading accessorial services. The protestants appealed contending that the service (a) is an essential part of the line-haul charge in that it relates to delivery, (b) that the line-haul rate encompassed the service and (c) that the service covered by the line-haul rate cannot be separately compensated unless the carriers show that the line-haul rate is inadequate to cover it. The Supreme Court held that each of these claims must be met by the Commission. The Court held that the Commission had not done so and that it had failed to explain its departure from prior norms and its legal basis for doing so. See also William N. Feinstein & Company v. United States, 209 F.Supp. 613 (S.D.N.Y.1962); National Small Shipments Traffic Conference, Inc. v. United States, 321 F.Supp. 500 (S.D.N.Y.1970). The same reasoning applies here. The Commission in the case at bar did not "explain its departure" from its prior norm by its contention that this case can be "distinguished" on the apparent proposition that here the railroads were unable to marshal and present substantial evidence to meet the requirements of the norm. The Commission has unwittingly, we believe, adopted an evidentiary rule which is discriminatory per se: In those cases

where the Commission determines that the carrier is able to meet the burden of proof that the separate charge is justifiable in relation to its overall line-haul rates, it must do so; on the other hand, in those cases where the rail carrier is, in the judgment of the Commission, unable to carry the burden of proof, the separate charge will be approved if it does not exceed the "maximum reasonable rates" established in Grain and Grain products, *supra.*

■ We recognize that activities and conditions in dynamic fields may dictate that because of later developments prior administrative construction and interpretation of a statute should no longer be binding if it does not achieve general legislative objectives. National Broadcasting Company v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). But a specific and long-standing administrative interpretation of a statute should not be overruled except for weighty reasons. Commissioner v. Estate of Sternberger, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955). An administrative interpretive rule of long standing has the same force and effect as a statute and rules of evidence apply to both in the same manner.

The Commission here noted that "even though the combined line-haul rate and the proposed charge does not exceed the prescribed maximum level, it is still incumbent on the Commission to determine if the separate charge is reasonable when related to the specific service for which it is to be assessed." 339 I. C.C. at 388. This, then, was a departure from its prior interpretive decisions.

We hold that the Commission has not adequately explained, for purposes of our review, its departure from prior norms. It has not sufficiently spelled out the legal basis of its decision. The Commission has not repudiated or overruled its prior decisions requiring that a carrier or carriers proposing separate and additional charges for accessorial services previously included within the line-haul rates may only do so if there is substan-

tial evidence that the existing line-haul rates do not adequately cover the entire services. We are not convinced that the instant proceeding can be "distinguished" as the Commission has indicated. It does appear, however, that it has been distinguished by the commission predicated upon the Commission's own determination of the burden of proof which it will require and impose in variable quantities, at its discretion, on a case-to-case basis.

We do not believe that the findings of the Commission are adequate in relation to our obligations and tasks on review. We recognize, just as the Supreme Court recognized in Secretary of Agriculture v. United States, *supra,* that "the Commission was not precluded from following a procedure fairly adapted to the unique circumstances of this case." 347 U.S. at 652, 74 S.Ct. at 831.

The matter is remanded to the Commission for further proceedings consistent with this opinion. The proposed charges are suspended and shall be ineffective until and unless otherwise ordered by this Court.