The **WICHITA BOARD OF TRADE, et al., Plaintiffs-Appellees,**

v.

The **UNITED STATES of America and the Interstate Commerce Commission, Defendants-Intervenors,**

and

**Atchison, Topeka and Santa Fe Railway Company, et al., Intervening Defendants-Appellants.**

No. 82–1808.

United States Court of Appeals, Tenth Circuit.

April 28, 1983.

Charles J. McCarthy, Washington, D.C. (Daniel J. Sweeney of McCarthy, Sweeney & Harkaway, P.C., Washington, D.C., Glaves, Weil & Evans, Wichita, Kan., with him on brief), for plaintiffs-appellees.

Henri Rush, Associate Gen. Counsel, Washington, D.C. (John Broadley, Gen. Counsel, and Craig M. Keats, Atty., I.C.C., Washington, D.C., with him on briefs), for I.C.C.

Christopher A. Mills, Chicago, Ill. (Charles W. Harris of Curtman, Harris, Stallings Grace & Snow, Wichita, Kan., with him on briefs), for intervening defendants-appellants.

Before SETH, LOGAN and BREITEN-STEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This controversy over railroad freight rates on grain has followed a tortuous and unusual path through a maze of administrative and judicial proceedings. Any simple statement of the facts, issues, and procedures is impossible. The appeal by the railroads attacks a judgment of the United States District Court for the District of Kansas which held that the rates imposed were unlawful and ordered the railroads to file an accounting of the moneys collected during a stay period and pay the amounts wrongfully collected into the registry of the court. The United States and the Interstate Commerce Commission have been permitted to intervene in the appeal. We reverse on jurisdictional grounds.

In 1970 the railroads proposed a charge, separate and above the applicable line-haul rate, for the inspection of grain in-transit. The proposal covered the western territory. At the time a similar charge was in effect for the eastern territory. In-transit inspection refers to the stopping of cars loaded with grain, placing them on railroad track facilities, determination of the grade of the grain, and subsequent movement of the car to its destination. The process is described in more detail in *Atchison T. & S.F.R. Co. v. Wichita Board of Trade,* 412 U.S. 800, 803, 93 S.Ct. 2367, 2372, 37 L.Ed.2d 350, and particularly n. 2. This decision will be hereafter referred to as *AT & SF v. Wichita.* See also Inspection in Transit of Grain and Grain Products, 339 I.C.C. 364, 365.

A chronology of the administrative and judicial actions will be helpful.

(1)—April 16, 1971. Interstate Commerce Commission (ICC) Div. 2 order holding the in-transit charges were just, reasonable, and lawful. 339 I.C.C. 364.

(2)—September 21, 1971. In banc ICC order affirming Div. 2 order in all pertinent respects. 340 I.C.C. 69.

(3)—May 26, 1972. Order and judgment of a three-judge district court for the Dis-

trict of Kansas setting aside the rate, remanding the matter to ICC, and suspending the charges until otherwise ordered by the court. 352 F.Supp. 365.

(4)—July 7, 1972. Order of Supreme Court staying judgment of the Kansas court until final determination of the railroads' appeal and requiring the railroads to keep account of charges received. 409 U.S. 801, 93 S.Ct. 24, 34 L.Ed.2d 14.

(5)—June 18, 1973. Supreme Court decision on merits affirming lower court's remand to ICC and reversing that court's injunction suspending the proposed charges. 412 U.S. 800, 826, 93 S.Ct. 2367, 2384, 37 L.Ed.2d 350.

(6)—August 3, 1973. Order of Kansas court remanding cause to ICC but saying nothing about retention of jurisdiction. R. 271.

(7)—January 21, 1975. ICC order on remand holding that the charges were not shown to be just and reasonable. 349 I.C.C. 89, 97. ICC ordered prospective cancellation of the charges. With respect to refund of collected charges it said, Id. at 93, "should relief in addition to that which is provided in this report and order be desired by protestants, action under section 13(1) of the act must be commenced." Section 13(1) has been recodified as 49 U.S.C. § 11701.

(8)—September 5, 1975. The Secretary of Agriculture, in his statutory capacity as representative of farm interests, moved ICC for a general refund order under 49 U.S.C. § 15(7). Section 15(7) has been recodified as 49 U.S.C. § 10708(b).

(9)—November 12, 1975. ICC summarily denied motion of Secretary. Docket No. 8548.

(10)—February 11, 1977. On Secretary's appeal of ICC order denying general refunds, the District of Columbia court of appeals reversed the ICC denial of the Secretary's refund motion and remanded the cause to the ICC. *Secretary of Agriculture v. I.C.C.*, D.C.Cir., 551 F.2d 1329, 1331.

(11)—February 23, 1977. Kansas district court ordered railroads to account and pay for charges collected. R. 66–67.

(12)—June 26, 1977. Supreme Court vacated Kansas court account and pay order and remanded with directions to remand cause to ICC for further consideration in connection with its reconsideration under the order of the District of Columbia Circuit. 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1087.

(13)—August 22, 1977. Kansas court order remanding cause to ICC with no provision for retention of jurisdiction. R. 70.

(14)—February 9, 1979. ICC order on remands. 359 I.C.C. 624. Charges held under Supreme Court "keep account" order should not be returned under a blanket refund order. Id. at 636–637. Kansas court advised to deny petition for refund of monies under its jurisdiction. Id. at 636. Shippers told to seek refunds in individual complaint proceedings under 49 U.S.C. § 11701. Id. at 637–638.

(15)—August 16, 1979. District of Columbia Circuit's dismissal of action brought by Secretary of Agriculture. Docket No. 76–1026.

(16)—May 6, 1982. Order of Kansas court reentering its account and pay order, R. 227–234, and denying reconsideration on June 22, 1982. R. 262.

(17)—June 29, 1982. Railroads' appeal from account and pay order docketed in the Tenth Circuit.

The plaintiffs-appellees are the Wichita Board of Trade and 37 other shipper organizations and shippers. The intervening defendants-appellants are the Atchison, Topeka and Santa Fe Railway Company and 33 other railroads. The United States and ICC are intervenors. The record does not show the amount of money at stake. The district court order covers the stay period beginning July 7, 1972, 409 U.S. 801, 93 S.Ct. 24, 34 L.Ed.2d 14, and ending June 18, 1973, 412 U.S. 800, 826, 93 S.Ct. 2367, 2384, 37 L.Ed.2d 350. The record does not show what accounting, if any, was made and does not show that the railroads have paid any money into the court registry. ICC comments on total collections of the in-transit charges are found at 349 I.C.C. 95. In its 1979

decision, ICC said that "[t]he equitable aspects of refunding past rates are . . . inextricably entwined with the Board's normal regulatory responsibility, as such refunds may substantially affect the future rates, performance and health of the industry." 359 I.C.C. at 634, n. 52.

The appellees moved to dismiss this appeal on the ground that jurisdiction did not lie in the court of appeals under either 28 U.S.C. § 1291 or § 1292(a). Another panel of this court denied the motion to dismiss by order entered January 14, 1983.

A preliminary question relates to the power of one judge of the three-judge panel to act alone in the entry of the May 6, 1982, account and pay order of the district court. When the case was filed in 1971, the Judicial Code, 28 U.S.C. § 2325, provided that actions to overturn ICC decisions should be brought in a federal district court and heard by a panel of three judges. Review of its judgment was by direct appeal to the United States Supreme Court. In 1975 Congress repealed § 2325 and provided for review of ICC orders by the courts of appeals. 88 Stat. 1917–1918. See 28 U.S.C. § 2341 et seq. The repealing act provided, 88 Stat. 1918, that it shall not affect pending actions which "shall proceed to final disposition under the law existing on the day they were commenced."

The three-judge panel on February 23, 1977, sustained the motion for refund and ordered R. 67, that all further proceedings be transferred to the resident judge for such further action as he finds necessary. Proceedings before three-judge district courts are governed by 28 U.S.C. § 2284. It provides that a single judge may conduct all proceedings except trial but he may not "enter judgment on the merits."

Any action by a single judge "may be reviewed by the full court at any time before final judgment." The resident judge entered the remand order of August 22, 1977, the May 6, 1982 account and pay order, and the June 22, 1982, order denying reconsideration. All of these were final judgments on the merits and were not approved by the panel. One judge had no power to enter them alone. No review by the panel was requested. We decline to reverse because of this assertion of power by one judge because on remand it would be possible that the panel will uphold the orders. We conclude that it is necessary to consider the jurisdiction of the panel over the cause.

Consideration of the jurisdiction of the Kansas court presents intertwined problems of procedure and substance. The district court suspended the proposed in-transit charges and said that they "shall be ineffective until and unless otherwise ordered by this Court." 352 F.Supp. at 369. On the application of the railroads, the Supreme Court stayed the district court order on condition that the railroads keep accurate accounts of charges collected and *in the event the Court affirms the suspension of the rates* the railroads shall pay the amounts collected to those entitled to them. 409 U.S. 801, 93 S.Ct. 24, 34 L.Ed.2d 14.

When the case came before the Supreme Court on the merits it noted the stay order and said: "We hereby direct the District Court to enter an order, *consistent with this opinion,* regarding the disposition of those amounts." [Emphasis supplied.] 412 U.S. at 802, n. 1, 93 S.Ct. at 2372, n. 1. In disposing of the case, the Court said, 412 U.S. at 826, 93 S.Ct. at 2384:

> "Here the Commission ordered the railroads to maintain records of the amounts collected as a result of the new charge. It may be that this adequately protects the shippers from irreparable damage, in the light of the availability of actions for reparations. The Commission may determine on remand that some further steps must be taken to protect the shippers. But in any event, it is clear that the District Court should not have entered the injunction it did. The action of the District Court is affirmed as to the remand to the Commission and is *reversed as to the injunction suspending* the proposed charges." [Emphasis supplied.]

The Court did *not* affirm the suspension of the charges.

We believe that the quoted language expresses the intent that reparations are for decision by the ICC, not the Kansas court. The district court must have so interpreted the Supreme Court order because it remanded the cause to ICC without retention of jurisdiction. R. 271.

After ICC acted, 349 I.C.C. 89, no proceeding was brought for review of that action in the Kansas court. Instead Wichita Board of Trade moved, in its original action, for refunds. The Kansas court granted the motion in its 1977 account and pay order. R. 56–67. The railroads appealed that order. The Supreme Court summarily reversed with directions to remand the case to ICC *for further consideration in connection with the D.C. Circuit case.* 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1087. The Kansas court again remanded the case to ICC without retention of jurisdiction. R. 70. By its remand without retention of jurisdiction, the Kansas court terminated its power and jurisdiction over all matters connected with review of ICC action. See *Greater Boston Television Corporation v. F.C.C.,* D.C.Cir., 463 F.2d 268, 287, cert. denied, 406 U.S. 943, 92 S.Ct. 2042, 32 L.Ed.2d 339, and *Chemical Leaman Tank Lines, Inc. v. U.S.,* D.Del., 446 F.Supp. 721. Appellees say that these decisions are not pertinent because they reflect only the policy of the courts involved. We believe that the better practice is for a court to expressly retain jurisdiction if such is its intent.

The effect of the Supreme Court's actions was to have the question of reparations considered and determined by the ICC, subject to appropriate judicial review. The 1982 decision of the Court in *Burlington Northern, Inc. v. United States,* —— U.S. ——, 103 S.Ct. 514, 74 L.Ed.2d 311, reviewed its decisions on the respective authority of the ICC and the courts with regard to railroad freight rates. After citing *AT & SF v. Wichita,* 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350, and other cases, the Court said, Id., 103 S.Ct. at 521, that those cases stand for three propositions: (1) primary jurisdiction to determine reasonable rates lies with ICC; (2) judicial authority to reject ICC rate orders "extends to the orders alone, and not to the rates themselves;" and (3):

"where there is a dispute about the appropriate rate, the equities favor allowing the carrier's rate to control pending decision by the Commission, since under the Act, the shipper may receive reparation for overpayment while the carrier can never be made whole after underpayment."

The directions given by the Supreme Court in 412 U.S. at 802, n. 1, and 826, 93 S.Ct. at 2372, n. 1, and 2384, and in 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1087, mean to us that the Court left reparations to the ICC in the exercise of its primary jurisdiction granted by §§ 13(1) and 15(7) of the Interstate Commerce Act, amended, and codified, and now appearing at 49 U.S.C. §§ 10707 and 11701.

Appellees support the jurisdiction of the Kansas court to enter the account and pay order by reliance on *United States v. Morgan,* 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211. Morgan arose under a different statutory scheme, the Packers and Stockyards Act, and the funds at stake had been impounded. Id. at 187, 59 S.Ct. at 798. Nothing in the record shows that any funds have been paid into the court registry. The applicability of Morgan is inconsistent with the Supreme Court's second remand in this case. 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1087.

Reliance on *Indiana & Michigan Electric Company v. Federal Power Commission,* D.C.Cir., 502 F.2d 336, cert. denied, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424, is also misplaced. That case arose under the Federal Power Act. The court exercised its equitable powers because of the unique procedural aspects of the case. See 502 F.2d at 347–348.

To support the jurisdiction of the Kansas court to enter the account and pay order, the Appellees cite 28 U.S.C. §§ 1336 and 1398. Section 1336 confers district court jurisdiction over ICC orders for the payment of money. In the case at bar ICC made no such order. Section 1398 refers to

district court jurisdiction of an ICC order made pursuant to a referral. No referral was made here. The cause was remanded to ICC.

A further argument of Appellees is that the Kansas court had jurisdiction to implement and enforce its own order. Reference has to be to the 1977 account and pay order of the Kansas court. The Supreme Court vacated that order, 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1087. Nothing was left of it to be either implemented or enforced.

We find nothing in the long history of this controversy to indicate that the Kansas court had any jurisdiction of the cause after its remand to the ICC pursuant to the order of the Supreme Court, 412 U.S. at 826, 93 S.Ct. at 2384. Also, we find no intent of the Supreme Court that the Kansas court retain jurisdiction over any matters which might arise under the Court's 1972 stay order, 409 U.S. 801, 93 S.Ct. 24, 34 L.Ed.2d 14. As we read Burlington Northern, reparations are under the primary jurisdiction of ICC with judicial review when appropriate. 103 S.Ct. at 521. This harmonizes with the congressional intent in the Staggers Rail Act of 1980, 94 Stat. 1895 et seq. The purpose of the Act "is to provide for the restoration, maintenance, and improvement of the physical facilities and financial stability of the rail system of the United States." Id. at 1897. ICC is the administrative agency responsible for achievement of the Act's intent.

The Kansas court did not have subject matter jurisdiction to make and enter its orders of May 6 and June 22, 1982. Accordingly, those orders are set aside and held for naught.