**MISSOURI PACIFIC RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**INDEPENDENT MILLS, INC., Defendant-Appellee.**

No. 81–1508.

United States Court of Appeals, Tenth Circuit.

May 17, 1983.

Phillip R. Fields, Gott, Young & Bogle, Wichita, Kan., for plaintiff-appellant.

Michael W. Lerner, Stinson, Mag & Fizzell, Kansas City, Mo. (Greer Gsell, Hershberger, Paterson, Jones & Roth, Wichita, Kan., with him on the brief), for defendant-appellee.

Before McWILLIAMS, DOYLE and BREITENSTEIN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Missouri Pacific, the appellant herein, seeks reversal of a judgment of the Kansas district court which interpreted a freight tariff to its detriment. In a summary judgment the court ruled that the tariff did not justify the imposition of additional freight charges on defendant Independent Mills.

The findings of the district court accurately set forth the facts and are not disputed. They are as follows:

The plaintiff, the Missouri Pacific Railroad Company, (hereinafter "Missouri Pacific"), is a corporation organized under the laws of the State of Missouri and is a common carrier of freight in the midwestern and southern states. The defendant is a corporation involved with the milling of flour and has its principal place of business in Coffeyville, Kansas.

The shipments in question involved wheat flour sent by rail from Coffeyville, Kansas, to Mobile, Alabama, Pensacola, Florida, and New Orleans, Louisiana. The parties agree that the amount claimed by the plaintiff, $53,548.56, is in addition to charges already paid to Missouri Pacific by the defendant for shipments to these three destinations. Both sides also agree that the issue . . . [on appeal] involves the determination of whether Ex Parte Tariff Increase X–313 (hereinafter Tariff X–313) and Missouri Pacific Railroad Company Tariff 57–F, Supplement 71, can be applied to these flour shipments.

Tariff X–313 was issued by the Interstate Commerce Commission (ICC) with the effective date of June 6, 1975. The general purpose of Tariff X–313 was to authorize increases in all freight rates by five percent (5%), effective October 1, 1975, to offset 1975 labor cost increases of the railroad. Through an exception to Tariff X–313, the southern carriers, including Missouri Pacific, at their request were not subject to the five percent increase. However, on May 9, 1975, pursuant to authority granted by the I.C.C. in its order of May 8, 1975, the railroads issued Supplement 2 to Tariff X–313. Supplement 2 became effective June 8, 1975. In Supplement 2 the railroads deleted the exception for southern carriers regarding the five percent increase mentioned above. Instead, the railroads replaced this general exception applicable to southern carriers with a proviso, circle reference 4, which made the exception to the tariff increases applicable only to specific commodities.

Tariff X–313 provided various tables of rates; however, only Tables 1 and 1–G are relevant here. Also contained in Tariff X–313, as it was supplemented, was a series of base rates applicable to export and import shipments, the Item 120 Series. Supplement 5 to Tariff X–313, which became effective June 20, 1975, contained Item 120–B. Since the shipments involved in this case were export shipments, the plaintiff contends the base rates contained in Item 120–B, which reflected the five percent increase for labor costs, applied to the defendant. Item 120–B provided in pertinent part as follows:

Apply Table 1 . . . except apply Table 1–G . . . on commodities named in Items 700 through 760 when Table 1–G [is] authorized . . . .

Item 745–C specifically applies to shipments of wheat flour, and it requires application of Table 1–G rates, subject to a proviso contained in circle reference four. Item 745–C provides:

Apply (4) Table 1–G, then apply (2) Table 2–G. Circle reference four provides:

Where reference is made hereto, the increases provided in Tables 1 and 1–G are not applicable on traffic as provided in Note 6.

Note 6 provides that circle reference four would apply to shipments originating in the western territory and destined for southern stations. The parties agree their shipments came within Note 6 and consequently the proviso in circle reference four is relevant here.

Missouri Pacific's case involves rail charges allegedly incurred during two time periods: November 10, 1975 through January 19, 1977 (Time Period A), for which $18,103.54 is claimed; and the period from January 20, 1977 to January 28, 1978 (Time Period B), for which $35,445.02 is claimed . . . .

## I.

### TIME PERIOD A

The inquiry here is whether circle reference four voids the rate increases provided in Tables 1 and 1–G. Missouri Pacific's contention is that although circle reference four negates Table 1–G, it does not negate Table 1.

Missouri Pacific's construction of the relationship of circle reference four with item 120–B has been adopted in a decision unrelated to the present proceedings. *Pillsbury Co. v. Missouri Pacific R.R.*, ICC Decision No. 36917, (Nov. 14, 1978) (Pillsbury I). In this decision the Commission observed first that Item 120 is superior to circle reference four, and will not permit of circle reference four's purported exclusion of both Table 1 and 1–G increases. It said:

In our view, Item 120 requires the application of either Table 1 or 1–G and does not permit a situation where neither increase table would apply. In other words, if, under the relevant commodity description for domestic movements in Items 700 through 760, the particular traffic would not be subject to Table 1–G, then Item 120 requires that Table 1 must apply to export movements.

A further observation of the Commission was that circle reference four was a "catch-all" provision:

Some items included in the series naming increases on domestic traffic (Items 700 through 760) are subject to Table 1, while others are subject to Table 1–G. In no instance is any item made subject to both. Thus, circle reference 4 was a catchall to exempt the application of one table or the other, as was appropriate, but not both.

The Commission also found that the

. . . assailed export rates on grain shipments . . . were legally applicable and [were] not shown to be unjust and unreasonable.

*Pillsbury I* was modified on May 21, 1979. *Pillsbury v. Missouri Pacific R.R.,* ICC Decision No. 36917 (May 21, 1979) (Pillsbury II). In *Pillsbury II* the ICC upheld its prior interpretation of Tariff X–313. The Commission's conclusion was that "[t]here is no merit in complainant's argument that the carriers intended to flag out of the general increase on shipments of wheat flour when the carriers' action of applying the increase indicates otherwise." *Id.*

Notwithstanding the clear purport of the ICC's decision in *Pillsbury I* and *Pillsbury II,* the district court gave a different interpretation to circle reference four. Finding tariff interpretation to be a question of law, the court noted that it was not required to adopt the ICC's point of view. It did not adopt the ICC interpretation. It found instead that "the plain and ordinary meaning of circle reference four is that neither Table 1 nor Table 1–G can be applied to the shipments involved in this case."

The court's decision cites two other facts in support of its interpretation: (1) the fact that rate tables for grain and grain products are invariably denoted with a "G" (e.g. 1–G), and (2) the fact that "the Southern Freight Traffic Bureau, the agent for railroads operating in southern territory, excluded wheat flour from any increases provided in Tariff X–313 for Period A."

The reasoning of the district court was that:

"[g]iven the practice of having separate tables for grain and grain products and the Southern Freight Traffic Bureau's exclusion of wheat flour during Period A from Tariff X–313 increases, it cannot be successfully contended the Court's interpretation results in an unfair, unusual or improbable result."

We must determine whether the district court's interpretation of circle reference four was valid, especially in light of a prior ICC interpretation.

■ As previously noted, tariff construction is a legal and not a factual exercise. *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 290, 42 S.Ct. 477, 478, 66 L.Ed. 943 (1922).

■ As to Tariff X–313, preliminary resort to the ICC was had in *Pillsbury I* and *Pillsbury II.* The ICC found that there had been no intent to exclude wheat flour from Tariff X–313.

It nevertheless appears from the evidence that the southern carriers intended to *exclude* wheat flour from the rate increase brought about by Tariff X–313. Such intent is evidenced by:

(1) The ICC order of May 8, 1975 which authorized price increases only on specifically designated commodities. Wheat flour was not included.

(2) Wheat flour was excluded from the rate increases by the Southern Freight Traffic Bureau. Indeed, as previously noted, Missouri Pacific stipulated to these findings. It objected only to their relevancy. They seem very relevant.

Our conclusion is that the district court was correct in its interpretation of Tariff X–313.

■ It acted properly in intervening and vacating an ICC tariff construction where, as here, the tariff was ambiguous on its face. This condition is especially subject to court review where the interpretation by the ICC is at odds with the interpretation intended by the drafters of the tariff.

As noted, the intent of drafters was to exclude wheat flour from the ambit of Tar-

iff X–313. The ICC reached an opposite result. Where such a condition is presented the ambiguity must be removed. *Cf. Cleveland Elec. Illuminating Co. v. Interstate Commerce Comm'n.,* 685 F.2d 170, 173 (6th Cir.1982) (dictum) (court may "freely review the Commission's construction of the tariff); *Coca-Cola Co. v. Atchison, Topeka, and Santa Fe Ry.,* 608 F.2d 213, 218 (5th Cir.1979) ("courts are under no obligation to defer to I.C.C. legal conclusions").

We note that this case is distinguishable from *Wichita Board of Trade v. United States,* 706 F.2d 1067 (10th Cir.1983). That case concerned the reasonableness of a charge imposed by the ICC for the inspection of grain in transit. We properly deferred, in *Wichita,* to the superior acumen of the ICC in assessing the reasonableness of a charge for the in transit inspection of grain. This case is quite different for it simply is not concerned with the reasonableness of the rate imposed by tariff X–313. Rather, the question here is whether the ICC erred in construing the intent of the drafters of tariff X–313.

Accordingly, with respect to Time Period A, Missouri Pacific is not entitled to recover additional freight charges from Independent Mills.

## II.

### TIME PERIOD B

Missouri Pacific also seeks recovery of charges allegedly incurred from January 20, 1977 to January 28, 1978.

■ On January 20, 1977, the ICC's Item 120–D was published. This cancelled the Table 1 increase. It is Missouri Pacific's contention that it circumvented Item 120–D by enacting its own tariff, Supplement 71 to Missouri Pacific Tariff 57–F. This tariff was enacted prior to the effective date of Item 120–D.

The district court ruled that since "Table 1 was inapplicable to wheat flour shipments during Period A, there consequently is no authority to incorporate Table 1 into Missouri Pacific's Tariff 57–F as it might apply to wheat flour shipments.

The ICC's decision in *Pillsbury II* provides a more persuasive argument against Missouri Pacific's position. We refer to the ICC holding that "Item 120–D had the effect of equalizing domestic and export rates by *eliminating* the Ex Parte 313 increase." (Emphasis supplied). It is not to be successfully argued then that Missouri Pacific's 57–F tariff was authorized by the ICC, a contention made by Missouri Pacific.

The judgment of the district court dismissing both of Missouri Pacific's contentions is affirmed.